DAVID B. GOLUBCHIK (State Bar No. 185520)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYB.com; JSK@LNBYB.COM

Attorneys for Debtor and
Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) Case No.: 2:14-bk-27223-TD |
| | ) |
| ATHERTON FINANCIAL BUILDING, LLC, | ) Chapter 11 Case |
| | ) |
| Debtor and Debtor in Possession. | ) **MOTION FOR ORDER** |
| | ) **AUTHORIZING SALE OF REAL** |
| | ) **PROPERTY FREE AND CLEAR OF** |
| | ) **ALL LIENS, CLAIMS,** |
| | ) **ENCUMBRANCES AND OTHER** |
| | ) **INTERESTS AND ASSUMPTION AND** |
| | ) **ASSIGNMENT OF UNEXPIRED REAL** |
| | ) **PROPERTY LEASE PURSUANT TO 11** |
| | ) **U.S.C. §§ 363 AND 365;** |
| | ) **DECLARATIONS OF BENJAMIN** |
| | ) **KIRK AND YUAN-SING CHANG IN** |
| | ) **SUPPORT THEREOF** |
| | ) |
| | ) <u>Hearing:</u> |
| | ) Date:   December 3, 2014 |
| | ) Time:   2:00 p.m. |
| | ) Place:  Courtroom 1345 |
| | )             255 E. Temple Street |
| | )             Los Angeles, CA 90012 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Atherton Financial Building, LLC ("the "Debtor") the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case hereby files its Motion For Order Authorizing Sale Of Real Property Free and Clear Of All Liens, Claims, Encumbrances and Other Interests and Assumption and Assignment of Unexpired Real Property Lease Pursuant To 11 U.S.C. §§ 363 and 365 (the "Motion").

# I.

## INTRODUCTION

The Debtor's primary asset is real property located at 1906 El Camino Real, Menlo Park, CA 94027 (the "Property"). The Property consists of a two-story class D stud and wood panel office building of approximately 11,855 square feet (the "Building"). The Debtor believes that the Property has a fair market value of approximately $15 million.

The Property is encumbered by statutory senior secured property taxes of approximately $95,000. In addition, the Property is encumbered by a first priority lien held by Bank SinoPac (the "Bank") in the principal amount of $2.5 million. Finally, the Property is encumbered by a second priority lien in favor of David and Cathy Tsang (the "Tsangs") to secure an obligation in the principal amount of $5.5 million. The unsecured debts asserted against the Debtor total approximately $260,000. The Debtor believes that total obligations against the estate are approximately $10 million.

At the commencement of the case, the Debtor sought to employ Intero Real Estate Services ("Intero") as its broker. Due to Intero's efforts, various parties have expressed a desire to purchase the Property. In particular, on October 31, 2014, buyer Rum Raisins Land Trust (the "Buyer") submitted an all-cash offer to purchase the Property for fourteen million three hundred thousand dollars ($14,300,000) (the "Purchase Price"), which amount is enough to pay all of the estate's debts in full with a distribution to equity. The Debtor and the Buyer then entered into that certain Commercial Property Purchase Agreement (the "Agreement") dated October 31, 2014 for the sale of the Property.

Based on the foregoing, the Debtor seeks Court authority to consummate the sale transaction in accordance with the terms and conditions of the Agreement. Based on the fact

1    that the consideration is sufficient to pay all claims in full, resulting in a solvent estate, the

2    Debtor believes that an overbid process is not necessary since the only potential beneficiaries of

3    an auction would be equity holders, who have agreed to proceed with the current sale as is.

4         The Debtor is also a party to a non-residential real property lease (the "Lease") with the

5    Debtor as the lessor and Noosphere Ventures (the "Lessee" or "Noosphere") as the lessee.

6    Through this Motion, the Debtor also seeks Court authority to assume the Lease and assign it to

7    Buyer as part of the sale transaction in accordance with 11 U.S.C. § 365.

8         The Debtor anticipates that all secured claims will be paid concurrently with the close of

9    escrow, with the remaining funds being transferred to the Debtor's counsel pending further

10   order of the Court.  After the passage of the Bar Date on December 16, 2014, the Debtor

11   anticipates filing a motion to authorize distribution of funds to creditors and dismissal of the

12   case, which would be a much more efficient manner to proceed than a liquidating plan or

13   conversion to Chapter 7.

14                                              **II.**

15                               **STATEMENT OF FACTS**

16   **A.    Background**

17        The Debtor commenced its chapter 11 bankruptcy case by filing a voluntary petition under

18   chapter 11 of title 11, sections 101 *et seq.* of the United States Code, (the "Bankruptcy Code") on

19   September 9, 2014 (the "Petition Date").  The Debtor's primary asset is the Property, which

20   consists of a two-story office Building.  Currently, Noosphere rents the second floor of the

21   Building.

22        The Property is encumbered by statutory senior secured property taxes of approximately

23   $95,000.  In addition, the Property is encumbered by a first priority lien held by the Bank in the

24   principal amount of $2.5 million.  Finally, the Property is encumbered by a second priority lien

25   in favor of the Tsangs to secure an obligation in the principal amount of $5.5 million, as

26   discussed below.  The unsecured debts asserted against the Debtor total approximately $260,000.

27   The Debtor believes that total obligations against the estate are approximately $10 million.

28

1    Prior to the bankruptcy filing, in 2010, a non-debtor entity (North America Capital LLC)

2    borrowed approximately $5.5 million from the Tsangs.  The Debtor executed a junior deed of

3    trust in favor of the Tsangs to secure such obligation.  The aforementioned note became due in

4    May 2014.  Because the Debtor was in the process of rehabilitating the Building while seeking

5    tenants to generate revenue, the Debtor was unable to satisfy the obligation of the non-debtor

6    entity.  As a result, on May 8, 2014, the Tsangs caused a notice of default and election to sell

7    under deed of trust (the "Notice of Default") to be issued and recorded in the San Mateo County

8    recorder's office against the Property.  On August 12, 2014, the Tsangs caused a notice of trustee

9    sale under the deed of trust (the "Notice of Sale") to be issued and recorded in the San Mateo

10   County recorder's office against the Property.  The trustee sale was scheduled to take place on

11   September 10, 2014.  Although the Debtor was able to procure a tenant for the second floor

12   space of the Building in August 2014, an agreement to delay or withdraw the foreclosure sale

13   was not reached. In order to preserve the Property and its value for the benefit of all creditors and

14   equity holders, this bankruptcy was commenced on September 9, 2014.

15   **B.      Bankruptcy Developments**

16   After the commencement of the case, the Debtor continued to preserve and maintain the

17   Property.  The Debtor sought to employ Intero as its real estate broker to market and sell the

18   Property for maximum value.  Due to Intero's efforts, several offers were received and entertained.

19   On October 31, 2014, the Buyer submitted an all-cash offer to purchase the Property for the

20   Purchase Price of $14,300,000, which would pay the estate's debts in full with a distribution to

21   equity.  The parties subsequently entered into the Agreement dated October 31, 2014 for the sale of

22   the Property.   A true and correct copy of the Agreement, including the addendum thereto, is

23   attached as **Exhibit "A"** to the Declaration of Benjamin Kirk (the "Kirk Declaration").

24   Pursuant to the Agreement, the Buyer is required to make a $500,000 initial deposit made

25   payable to Old Republic Title Company (the "Escrow Company").   The Buyer has made the

26   deposit to the Escrow Company.  A true and correct copy of the proof of deposit by the Buyer is

27   attached as **Exhibit "B"** to the Kirk Declaration.

28

1    Finally, all due diligence associated with the sale transaction has been completed and/or

2    waived.  In other words, there are no contingencies to the consummation of this sale other than

3    approval of this Court.

4    Based on the foregoing, the Debtor seeks Court authority to sell the Property to the Buyer –

5    free and clear of all liens, encumbrances, and interests, as detailed in the preliminary title report

6    attached as **Exhibit "C"** to the Kirk Declaration.  Through this Motion, the Debtor also seeks

7    Court authority to assume the Lease and assign it to Buyer as part of the sale transaction in

8    accordance with 11 U.S.C. § 365.

9    **III.**

10    **DISCUSSION**

11    **A.    The Court Should Authorize the Debtor to Sell the Property Free and Clear of**

12    **All Liens, Claims, Interests, and Encumbrances**

13    1.    The Debtor Has Complied With All Notice Requirements Under the

14    Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local

15    Bankruptcy Rules Governing the Sale.

16    Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or

17    lease, other than in the ordinary course of business, property of the estate."  11 U.S.C.

18    § 363(b)(1).  Section 102(1) defines "after notice and a hearing" as after such notice as is

19    appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in

20    the particular circumstances.  11 U.S.C. § 102(1)(A).

21    Rule 6004(a) of the Federal Rules of Bankruptcy Procedure provides in pertinent part that

22    notice of a proposed sale not in the ordinary course of business must be given pursuant to

23    Bankruptcy Rule 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with section

24    363(b)(2) of the Bankruptcy Code.  FED.R.BANKR.P. 6004(a).  Rule 2002(a)(2) requires at least

25    21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary

26    course of business, unless the Court for cause shown shortens the time or directs another method

27    of giving notice.  FED.R.BANKR.P. 2002(a)(2).  Rule 2002(c)(1) requires that the notice of a

28    proposed sale include the date, time and place of any public sale, the terms and conditions of any

1    private sale, and the time fixed for filing objections.  It also provides that the notice of sale of

2    property is sufficient if it generally describes the property.  FED.R.BANKR.P. 2002(c)(1).  Rule

3    2002(i) requires that the notice be mailed to committees elected pursuant to 11 U.S.C. § 705 or

4    appointed pursuant to 11 U.S.C. § 1102.[1]  FED.R.BANKR.P. 2002(i).  Rule 2002(k) requires that

5    the notice be given to the United States Trustee.  FED.R.BANKR.P. 2002(k).

6       Rule 6004(c) provides that a motion for authority to sell property free and clear of liens or

7    other interests must be made in accordance with Rule 9014 and must be served on the parties

8    who have liens or other interests in the property to be sold.  FED.R.BANKR.P. 6004(c).

9       Local Bankruptcy Rule 9013-1(d)(2) requires that a notice of motion and motion be

10   served at least 21 days before the hearing on the date specified in the notice.  L.B.R. 9013-

11   1(d)(2).

12      In addition, Local Bankruptcy Rule 6004-1(f) requires that an additional copy of the

13   Notice be submitted to the Clerk of the Bankruptcy Court together with a document Form 6004-2

14   at the time of filing for purposes of publication.  L.B.R. 6004-1(f).

15      The Debtor has complied with all of the above provisions of the Bankruptcy Code, the

16   Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.  The Debtor has

17   complied with Bankruptcy Rules 6004(a) and 2002(a)(2), (c)(1), (i) and (k), because the Notice

18   that has been filed contemporaneously herewith, which includes the date time and place of the

19   sale and the deadline for objecting thereto, was served on the United States Trustee, all of the

20   Debtor's known creditors, and all parties requesting special notice.  The Debtor has complied

21   with Bankruptcy Rule 6004(c) because the Notice and the Sale Motion were also served upon the

22   parties who have alleged liens or interests in the properties.  The Debtor has complied with the

23   requirements of Local Bankruptcy Rule 6004-1(f) because the Debtor has filed the Notice and

24   Form 6004-2 with the Clerk of the Bankruptcy Court.

25

26

27

28

[1] As of the date of this Motion, no official committee of unsecured creditors has been appointed in this case.

2.    <u>The Motion Should Be Approved Because Good Business Reasons Exist to</u>

<u>Grant the Motion and the Proposed Sale is in the Best Interests of the Estate</u>

As a general matter, a Court considering a motion to approve a sale under Section 363(b) should determine from the evidence presented before it that a "good business reason" exists to grant such a motion.  <u>In re Lionel Corp.</u>, 722 F.2d 1063, 1071 (2d Cir.1983).  In addition, the Court must further find it is in the best interest of the estate.  To make this determination, a Court should consider whether:

(1)    the sale is fair and reasonable, <u>i.e.</u>, the price to be paid is adequate;

(2)    the property has been given adequate marketing;

(3)    the sale is in good faith, i.e., there is an absence of any lucrative deals with insiders, and

(4)    adequate notice has been provided to creditors.

<u>In re Wilde Horse Enterprises, Inc.</u>, 136 B.R. 830, 841-2 (Bankr.C.D.Cal.1991); <u>In re The Landing</u>, 156 B.R. 246, 249 (Bankr.E.D.Mo.1993); <u>In re Mama's Original Foods, Inc.</u>, 234 B.R. 500, 502-505 (C.D.Cal.1999).  The Debtor submits that the proposed sale of the Property free and clear of liens, claims, and interests satisfies each of these requirements.

a.        **Sound Business Purpose.**

The Ninth Circuit Bankruptcy Appellate Panel in <u>Walter v. Sunwest Bank (In re Walter)</u>, 83 B.R. 14, 19 (9th Cir.B.A.P.1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b).  The facts pertaining to the sale of the Property amply substantiate the Debtor's business decision that the contemplated sale serves the best interests of the estate's creditors and merits the approval of the Court.  As disclosed from the commencement of this case, the Debtor determined that the sale of the Property was necessary to pay off its creditors.  The Debtor retained Intero to assist it in connection with such efforts. Based on available information, the Debtor anticipates that the sale of the Property will result in 100% payment to all creditors, with a distribution to equity.  The certainty of immediate and full payment to all creditors by the proposed sale is strong, and a sound business purpose exists for

1    pursuing and consummating the proposed sale.

2         **b.      Fair and Reasonable Price.**

3         In order for a sale to be approved under Section 363(b), the purchase price must be fair

4    and reasonable.  See generally, In re Canyon Partnership, 55 B.R. 520 (Bankr.S.D.Cal.1985).

5    The trustee (or debtor in possession) is given substantial discretion in this regard.  Id.  In

6    addition, Courts have broad discretion with respect to matters under section 363(b).  See Big

7    Shanty Land Corp. v. Comer Properties, Inc., 61 B.R. 272, 278 (Bankr.N.D.Ga.1985).  In any

8    sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold.

9    Wilde Horse Enterprises, Inc., 136 B.R. at 841 (citing In re Chung King, Inc., 753 F.2d 547 (7th

10   Cir.1985)), In re Alpha Industries, Inc., 84 B.R. 703, 705 (Bankr.Mont.1988).

11        Due to Intero's marketing efforts, the Debtor has received several expressions of interest

12   and offers for the Property, which were below what the Debtor believed the Property was worth.

13   The Buyer's offer of $14.3 million, however, was not only the highest offer received but is also

14   in line with what the Debtor originally believed what the Property was worth ($15 million).

15   Based on information from Intero, the $14.3 million purchase price offered by the Buyer,

16   representing $1,459 per square feet, is almost forty percent more than the average sale price of

17   similar comparable properties in the area at $900 per square feet.  See (Chang's Decl. ¶ 5).  As a

18   result, as anticipated, the Debtor believes that the proceeds from the sale of the Property will be

19   sufficient to pay all of the estate's debts in full with a distribution to equity.

20        **c.      Adequate Marketing.**

21        The Debtor retained Intero to assist it in marketing the Property.  The accompanying

22   Declaration of Yuan Sing Chang (the "Chang Declaration") sets forth the marketing efforts

23   undertaken by Intero to generate interest in the Property.  To market the Property, Intero engaged

24   in the following marketing efforts:

25             a.      Listed the Property on the CoStar and LoopNet websites for commercial

26        properties;

27             b.      Listed the Property on MLS;

28             c.      Created a marketing brochure for the Property;

9

d.    Sent several emails to major brokers in the Bay Area and nationwide,

including CBRE, Colliers, and Cushman;

e.    Conducted 22 tours of the Property; and

f.    Sent out 35 marketing packets to qualified purchasers.

Intero also worked with the Debtor to formulate responses to offers and counter-offers. As a result of Intero's efforts and due diligence, the Debtor and the Buyer agreed on the purchase price of $14.3 million, which is sufficient to pay the estate's creditors in full with a distribution to equity.  The court should find that the Property was adequately marketed.

**d.    Good Faith.**

When a bankruptcy Court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser.  In re Abbotts Dairies, 788 F.2d at 149.  Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and as such, it mirrors the requirement of Section 1129 that the Bankruptcy Court independently scrutinizes the debtor's reorganization plan and makes a finding that it has been proposed in good faith.  Id. at 150. With respect to the Debtor's conduct in conjunction with the sale of the Property, the good faith requirement focuses principally on whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  Abbotts Dairies, 788 F.2d at 147; Wilde Horse Enterprises, 136 B.R. at 842.

In regards to the Buyer, the Debtor has negotiated the Agreement at arm's length, and the proposed buyer is not an "insider" of the Debtor as that term is defined in the Bankruptcy Code.  11 U.S.C. § 101(31).  No offers received by the Debtor were ignored, and the Debtor attempted to obtain the highest possible price for the Property.  Based on the foregoing, the Debtor submits that the Buyer is a "good faith" purchaser and entitled to all of the protections afforded by 11 U.S.C. § 363(m).

**e.      Accurate and Reasonable Notice.**

The purpose of the notice is to provide an opportunity for objections and hearing before the Court if there are objections.  In re Karpe, 84 B.R. 926, 930 (Bankr.M.D.Pa.1988). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections.  Id.

As set forth above, the Debtor served the Notice on the United States Trustee, all of the Debtor's known creditors, and all parties requesting special notice.  The Notice includes the date, time and place of the sale and the time fixed for filing objections thereto.  The Notice and Motion were served upon the parties who have liens against, or interests in, the Property, and the Debtor filed the Notice and Form 6004-2 with the Clerk of the Bankruptcy Court, as required by Local Bankruptcy Rule 6004-1(f), so that the Clerk of the Bankruptcy Court can publish information regarding the proposed sale.  Thus, the Debtor submits that this notice should be deemed adequate, accurate and reasonable by the Court.

3.      The Sale of the Property Should be Free and Clear of All Liens, Claims, Interests and Encumbrances Under 11 U.S.C. §363(f).

Bankruptcy Code §363(f) provides that a debtor may sell property of the estate "free and clear of any interest in such property" if:

(1)      applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(2)      such entity consents;

(3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)      such interest is in bona fide dispute; or

(5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).  Because Section 363(f) is in the disjunctive, the Debtor must only meet one of the five subsections of Section 363(f) in order to sell the Units free and clear of all

11

1    liens, claims, interests and encumbrances.    In re Whittemore, 37 B.R. 93, 94

2    (Bankr.D.Or.1984).

3        **a.    The Sale of the Property Free and Clear Should Be Approved**

4    **Under 11 U.S.C. § 363(f)(3).**

5        Based on the sale price of the Property ($14,300,000) and the total amount of secured

6    debt against the Property ($9,744,330.59), the sale price will exceed the value of all liens.

7    The court should approve the sale free and clear of all liens, claims, encumbrances, and

8    interests that are referenced to in the preliminary title report.    See (Mot. Ex. B).    A sale free

9    and clear of liens is appropriate pursuant to Section 363(f)(3) of the Bankruptcy Code.

10        4.    The Court Should Waive the 14-Day Stay of FRBP 6004(h)

11        The Debtor and the Buyer are looking to finalize the sale as soon as possible.    In order to

12    provide maximum time to allow for closing to occur, the Debtor submits that waiver of the

13    14-day stay of FRBP 6004(h) is appropriate and is in the best interest of the estate.

14    **B.    The Court Should Authorize the Debtor to Assume and Assign the Non-**

15        **Residential Real Property Lease to the Buyer**

16        Barring exceptions not herein relevant, Sections 365(a) and 1107(a) authorizes a debtor

17    in possession, "subject to the Court's approval . . . [to] assume or reject any executory contract or

18    unexpired lease of the debtor."    A debtor in possession may assume or reject executory contracts

19    for the benefit of the estate.    In re Klein Sleep Products, Inc., 78 F.3d 18, 25 (2d. Cir.1996); In re

20    Central Fla. Metal Fabrication, Inc., 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); In re Gucci, 193

21    B.R. 411, 415 (S.D.N.Y.1996).    In reviewing a debtor in possession's decision to assume or

22    reject an executory contract, a bankruptcy court should apply the "business judgment test" to

23    determine whether it would be beneficial to the estate to assume it.    In re Continental Country

24    Club, Inc., 114 B.R. 763, 767 (Bankr.M.D.Fla.1990); see also In re Gucci, 193 B.R. at 415.    The

25    business judgment standard requires that the court follow the business judgment of the debtor

26    unless that judgment is the product of bad faith, whim, or caprice.    In re Prime Motors Inns, 124

27    B.R. 378, 381 (Bankr.S.D.Fla.1991), *citing* Lubrizol Enterprises v. Richmond Metal Finishers,

28    756 F.2d 1043, 1047 (4th Cir.1985), *cert. denied*, 475 U.S. 1057 (1986).

1    Pursuant to Section 365(f)(2) of the Bankruptcy Code, a debtor may assign its executory

2    contracts and unexpired leases, provided the debtor first assumes such executory contracts and

3    unexpired leases in accordance with Section 365(b)(1), and provides adequate assurance of

4    future performance by the assignee.  Pursuant to Section 365(b)(1), assumption of executory

5    contracts and unexpired leases requires a debtor to: (a) cure any existing defaults under such

6    agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary

7    loss resulting from the defaults; and (c) provide adequate assurance of future performance under

8    the contract or lease.  11 U.S.C. § 365(b)(1); see also In re Bowman, 194 B.R. 227, 230

9    (Bankr.D.Ariz.1995), In re AEG Acquisition Corp., 127 B.R. 34, 44 (Bankr.C.D.Cal.1991), aff'd

10    161 B.R. 50 (9th Cir.B.A.P.1993).

11    The assumption and assignment of executory contracts furthers the goals of Chapter 11 of

12    promoting reorganization by balancing the debtor's interest in maximizing the value of its estate

13    against the contracting party's interest in receiving the benefit of its bargain and being protected

14    against default by the debtor after assumption has occurred.  In re Embers 86th Street. Inc., 184

15    B.R. 892, 896 (Bankr.S.D.N.Y.1995).

16    Here, the Debtor is a party to the Lease with Debtor as the lessor and Noosphere as the

17    lessee.  The tenant is an integral party of the sale transaction and should be assumed by the

18    Debtor and assigned to the Buyer.  Since the Debtor is not the lessee under the lease, the

19    "adequate assurance of future performance" requirements of 11 U.S.C. § 365(b)(1)(C) are not

20    applicable herein.

21    The Debtors request that the 14-day stay of Federal Rule 6006(d), which is similar to

22    Federal Rule 6004(h), be waived for the same reasons as discussed above. Waiver of both Rules

23    6004(h) and 6006(d) will provide symmetry and congruence within the sale order, will not harm

24    the estate, and will benefit the estates by fully consummating the sale.

25    **C.    The Court Should Approve a 1.5% Commission to the Buyer's Agent That Will**

26    **Be Shared with Intero's 6% Commission**

27    Intero's employment application is currently pending before this Court.  Pursuant to

28    the listing agreement entered into between the Debtor and Intero on October 1, 2014 (the

13

"Listing Agreement"), Intero will be paid 6% of the gross sale price for the Property. The commercial sales Agreement further provides that the Buyer's agent, Peninsula Company (the "Buyer's Agent"), will be paid a commission of 1.5% of the Property's purchase price. The Court should allow the Debtor to pay a 1.5% commission to the Buyer's Agent that will be shared in Intero's approved 6% commission.

## III.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(i)　　finding that notice of the Motion was adequate and appropriate under the circumstances;

(ii)　　granting the Motion in its entirety;

(iii)　　authorizing the Debtor to take any and all steps necessary and proper to complete the sale to the Buyer;

(iv)　　finding the Buyer to be a good faith purchaser with all the protections of 11 U.S.C. § 363(m);

(v)　　waiving the 14-day stay periods of Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure;

(vi)　　authorizing a 1.5% commission to the Buyer's Agent that will be shared in Intero's approved 6% commission; and

(vii)　　granting such other and further relief as may be necessary or appropriate under the circumstances.

Dated: November 7, 2014　　　　　　　ATHERTON FINANCIAL BUILDING, LLC


By: ___*/s/ Jeffrey S. Kwong*_____
　　　　DAVID B. GOLUBCHIK
　　　　JEFFREY S. KWONG
　　　　LEVENE, NEALE, BENDER, YOO
　　　　　　& BRILL, L.L.P.
　　　　Attorneys for Chapter 11 Debtor
　　　　and Debtor in Possession

### DECLARATION OF BENJAMIN KIRK

I, Benjamin Kirk, hereby declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the managing member of Sunshine Valley, LLC, who has a 20% ownership interest in Atherton Financial Building, LLC (the "Debtor").  I also manage the operations of the Debtor.  I make this Declaration in support of the Debtor's Motion for Order Authorizing the Sale of Real Property Free and Clear of All Liens, Claims, Encumbrances and Other Interests and Assumption and Assignment of Unexpired Real Property Lease Pursuant to 11 U.S.C. §§ 363 and 365 (the "Motion").  Unless otherwise stated, all capitalized terms herein will have the same meanings as in the Motion.

3.      The Debtor commenced its chapter 11 bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on September 9, 2014.

4.      The Debtor's primary asset is the Property, which consists of a two-story class D stud and wood panel office Building of approximately 11,855 square feet.  The Building is being used as office space.  Currently, Noosphere rents the second floor of the Building.

5.      The Property is encumbered by statutory senior secured property taxes of approximately $95,000.  In addition, the Property is encumbered by a first priority lien held by the Bank in the principal amount of $2.5 million.  Finally, the Property is encumbered by a second priority lien in favor of the Tsangs to secure an obligation in the principal amount of $5.5 million, as discussed below.  The unsecured debts asserted against the Debtor total approximately $260,000.  I believe that the total obligations against the estate are approximately $10 million.

6.      Prior to the bankruptcy filing, in 2010, a non-debtor entity (North America Capital LLC) borrowed approximately $5.5 million from the Tsangs.  The Debtor executed a junior deed of trust in favor of the Tsangs to secure such obligation.

7.      The aforementioned note became due in May 2014.  Because the Debtor was in the process of rehabilitating the Building while seeking tenants to generate revenue, the Debtor was unable to satisfy the obligation of the non-debtor entity.  As a result, on May 8, 2014, the Tsangs

1   caused a Notice of Default to be issued and recorded in the San Mateo County recorder's office

2   against the Property.  On August 12, 2014, the Tsangs caused a Notice of Sale to be issued and

3   recorded in the San Mateo County recorder's office against the Property.

4        8.     The trustee sale was scheduled to take place on September 10, 2014.  Although the

5   Debtor was able to procure a tenant for the second floor space of the Building in August 2014, an

6   agreement to delay or withdraw the foreclosure sale was not reached. In order to preserve the

7   Property and the value for the benefit of all creditors and equity holders, this bankruptcy was

8   commenced on September 9, 2014.

9        9.     After the commencement of this case, the Debtor continued to preserve and

10   maintain the Property for the estate.  We filed an application to employ Intero as the Debtor's real

11   estate broker to market and sell the Property for maximum value.  Due to Intero's marketing

12   efforts, the Debtor received several initial offers to purchase the Property.

13        10.    On October 31, 2014, after negotiations, Rum Raisins Land Trust (the "Buyer")

14   submitted an all-cash offer to purchase the property for fourteen million three hundred thousand

15   dollars ($14,300,000), which would pay all of the estate's debts in full with a distribution to equity.

16   The Buyer's offer was the highest offer I received to date.

17        11.    The Debtor and the Buyer subsequently entered into the commercial sales

18   Agreement dated October 31, 2014 for the sale of the Property.  A true and correct copy of the

19   Agreement, including the addendum thereto, is attached as **Exhibit "A"** to my declaration.

20        12.    I negotiated the Agreement with Buyer at arm's length, and the Buyer is not an "insider" of

21   the Debtor.  I learned of the Buyer solely through the Debtor's real estate broker.  I believe that the Buyer is

22   a good faith purchaser.

23        13.    Pursuant to the Agreement, the Buyer is required to make a $500,000 initial deposit

24   to the Escrow Company.   The Buyer made the initial deposit to the Escrow Company on

25   November 4, 2014.  A true and correct copy of the proof of deposit made by the Buyer is attached

26   as **Exhibit "B"** to my declaration.

27        14.    A true and correct copy of the Property's preliminary title report is attached hereto

28   as **Exhibit "C"**.  The sale would be free and clear of all liens and encumbrances set forth therein.

16

15.    In the exercise of my business judgment, I believe that the sale to the Buyer is in the best interest of the estate and should be approved.    The sale will allow for an expedient administration for this estate with a prompt distribution to all creditors.  I believe the proposed sale is a huge windfall for the estate, its creditors and equity holders.

16.    The Debtor is also a party to the Lease with Debtor as the lessor and Noosphere as the lessee.  Pursuant to the Motion, and in the exercise of my business judgment, I believe that the assumption of the Lease and its assignment to Buyer is appropriate and should be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 6th day of November 2014, at West Covina, California.

BENJAMIN KIRK

## DECLARATION OF YUAN-SING CHANG

I, YUAN-SING CHANG, do hereby declare as follows:

2.      I am currently a realtor with Intero Real Estate Services ("Intero").  I have personal knowledge of the matters stated herein and, if called to testify, could and would testify competently thereto.

3.      Intero entered into an Exclusive Sales Listing Agreement, dated October 1, 2014, with Atherton Financial Building, LLC (the "Owner") to list the property located at 1906 El Camino Real, Menlo Park, CA 94027 (the "Property").

4.      To market the Property, I, as well as other representatives of Intero, engaged in the following marketing efforts:

      a.      Listed the Property on the CoStar and LoopNet websites for commercial properties;

      b.      Listed the Property on MLS;

      c.      Created a marketing brochure for the Property;

      d.      Sent several emails to major brokers in the Bay Area and nationwide, including CBRE, Colliers, and Cushman;

      e.      Conducted 22 tours of the Property; and

      f.      Sent out 35 marketing packets to qualified purchasers.

5.      Several expressions of interest and offers were received.  I worked with all interested parties to provide requested information and due diligence materials.  I also worked with the Owner to formulate responses to offers, including several counter-offers.

6.      Based on my research, the $14.3 million purchase price offered by the Buyer, representing $1,459 per square feet, is almost forty percent more than the average sale price of similar comparable properties in the area at $900 per square feet.

/ / /

/ / /

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3    Executed on this 6th day of November 2014, at Saratoga, California.

4

5    YUAN-SING CHANG

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"



CALIFORNIA
ASSOCIATION
OF REALTORS®

## COMMERCIAL PROPERTY PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (NON-RESIDENTIAL)
(C.A.R. Form CPA, Revised 10/02)

Date **10/31/2014**_____, at **Redwood City CA**_____, California.
1. **OFFER:**
   A. **THIS IS AN OFFER FROM** Rum Raisins Land Trust _____ ("Buyer").
      ☐ Individual(s), ☐ A Corporation, ☐ A Partnership, ☐ An LLC, ☐ An LLP, or ■ Other  a Califonia Land Trust _____ .
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _____ 1906 El Camino Real Menlo Park Ca 94027_____
      _____, Assessor's Parcel No. 060-333-410_____, situated in
      _____, County of San Mateo _____, California, ("Property").
   C. **THE PURCHASE PRICE** offered is fourteen million three hundred thousand dollars _____
                                                            Dollars $ 14,300,000.00_____
   D. **CLOSE OF ESCROW** shall occur on 3 days after contingency removal (date) (or ☐ 7-10   **Days** After Acceptance).
2. **FINANCE TERMS:** Obtaining the loans below **is a contingency** of this Agreement unless: **(i)** either 2L or 2M is checked below; or **(ii)** otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs **is not a contingency.** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 500,000.00___
      to the agent submitting the offer (or to ☐ _____ ), by Personal Check
      (or ☐ _____ ), made payable to  Old Republic Title Company _____ ,
      which shall be held uncashed until Acceptance and then deposited within **3** business days after
      Acceptance or ☐ _____ ,
      with Escrow Holder, or ☐ into Broker's trust account.
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . $ 0_____
      within _____ **Days** After Acceptance, or ☐ _____ .
   C. **FIRST LOAN IN THE AMOUNT OF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0_____
      NEW First Deed of Trust in favor of ☐ Lender, ☐ Seller,
      OR ☐ ASSUMPTION of (or ☐ "subject to") Existing First Deed of Trust encumbering the Property, securing
      a note payable at maximum interest of _____ % fixed rate, or _____ % initial adjustable
      rate with a maximum interest rate of _____ %, balance due in _____ years, amortized over
      _____ years. (If checked: ☐ and with a margin not to exceed _____ %, tied to the following
      index _____ .) Buyer shall pay loan fees/points not to exceed _____
      Additional terms _____
      _____
   D. **SECOND LOAN IN THE AMOUNT OF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0_____
      NEW Second Deed of Trust in favor of ☐ Lender, ☐ Seller,
      OR ☐ ASSUMPTION of (or ☐ "subject to") Existing Second Deed of Trust encumbering the Property,
      securing a note payable at maximum interest of _____ % fixed rate, or _____ %
      initial adjustable rate with a maximum interest rate of _____ %, balance due in _____ years,
      amortized over _____ years. (If checked: ☐ and with a margin not to exceed _____ %, tied to
      the following index: _____ .) Buyer shall pay loan fees/points not to exceed _____ .
      Additional terms _____
      _____
   E. **ADDITIONAL FINANCING TERMS:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0_____
      _____
      _____
   F. **BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of . . . $ 0_____
      to be deposited with Escrow Holder within sufficient time to close escrow.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 13,800,000.00____
   H. **LOAN APPLICATIONS:** Within **7** (or ☐ _____ ) **Days** After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified above.
   I. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2H) shall, within **7** (or ☐ _____ ) **Days** After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   J. **LOAN CONTINGENCY REMOVAL: (i)** Within **17** (or ☐ _____ ) **Days** After Acceptance Buyer shall, as specified in Paragraph 17, remove the loan contingency or cancel this Agreement; **OR (ii)** (if checked) ☐ loan contingency shall remain in effect until the designated loans are funded.
   K. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is **(OR,** if checked, ■ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within **17** (or _____ ) **Days** After Acceptance), Buyer shall, as specified in paragraph 17, remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 17, remove the appraisal contingency within **17** (or _____ ) **Days** After Acceptance.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
CPA REVISED 10/02 (PAGE 1 OF 10)

Buyer's Initials ( E.F. ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

EQUAL HOUSING
OPPORTUNITY

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 10)**

| | | |
|---|---|---|
| **Agent:** Maria Rutenburg | **Phone:** (650) 743-4915 | **Fax:** (775) 258-2939 | Prepared using WINForms® software |
| **Broker:** Peninsula Company | 2342 California Str. #3, Mountain View, CA 94040 | | |

Property Address: _____ 1906 El Camino Real, Menlo Park CA 94027 _____ Date: 10/31/2014 _____

**L.** ■ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan, in paragraphs 2C, 2D, 2E or elsewhere in this Agreement, is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**M.** ■ **ALL CASH OFFER** (If checked): No loan is needed to purchase the Property. Buyer shall, within **7 (or** ☐ _____ **) Days** After Acceptance, provide Seller written verification of sufficient funds to close this transaction.

**N. SELLER FINANCING:** For any Seller financing designated above, Buyer is to execute a note secured by a deed of trust in favor of Seller, on the terms and conditions set forth in the attached addendum (C.A.R. Form SFA).

**O. ASSUMED OR "SUBJECT TO" FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. Seller shall, within the time specified in paragraph 17, provide Copies of all applicable notes and deeds of trust, loan balances and current interest rates to Buyer. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement. Differences between estimated and actual loan balances shall be adjusted at Close Of Escrow by cash down payment. Impound accounts, if any, shall be assigned and charged to Buyer and credited to Seller. Seller is advised that Buyer's assumption of an existing loan may not release Seller from liability on that loan. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.

**3. CLOSING AND OCCUPANCY:**

**A. Seller-Occupied or Vacant Units:** Occupancy shall be delivered to Buyer at 1_____ ☐ AM ■ PM, ■ on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ **Days** After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: **(i)** enter into a written occupancy agreement; and **(ii)** consult with their insurance and legal advisors.

**B. Tenant-Occupied Units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.

**C.** At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

**D.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If the Property is a unit in a condominium or located in a common-interest subdivision, Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

**4. SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the Civil Code.

**5. ALLOCATION OF COSTS** (if checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service is by the method specified in paragraph 17.

**A. INSPECTIONS AND REPORTS:**

**(1)** ☐ Buyer ☐ Seller shall pay for sewer connection, if required by Law prior to Close Of Escrow _____ .

**(2)** ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal system inspected _____ .

**(3)** ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____ .

**(4)** ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report prepared by _____ .

**(5)** ☐ Buyer ☐ Seller shall pay for the following inspection or report _____ .

**(6)** ■ Buyer ☐ Seller shall pay for the following inspection or report buyer will do any reports within 5 days at his expense .

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

**(1)** ☐ Buyer ☐ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.

**(2)** ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.

**(3)** ☐ Buyer ☐ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed prior to Close Of Escrow. Prior to Close Of Escrow Seller shall provide Buyer a written statement of compliance, if required by Law.

**C. ESCROW AND TITLE:**

**(1)** ☐ Buyer ■ Seller shall pay escrow fee 50/50 _____
Escrow Holder shall be _____

**(2)** ■ Buyer ■ Seller shall pay for **owner's** title insurance policy specified in paragraph 16 50/50 _____
Owner's title policy to be issued by _____
(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

**(1)** ☐ Buyer ■ Seller shall pay County transfer tax or transfer fee _____ .

**(2)** ☐ Buyer ☐ Seller shall pay City transfer tax or transfer fee _____ .

**(3)** ☐ Buyer ☐ Seller shall pay OA transfer fees _____ .

**(4)** ☐ Buyer ☐ Seller shall pay OA document preparation fees _____ .

**(5)** ■ Buyer ☐ Seller shall pay for recording fee _____ .

**(6)** ☐ Buyer ☐ Seller shall pay for _____ .

Buyer's Initials ( E.F. ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 2 OF 10)**

EQUAL HOUSING OPPORTUNITY

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 2 OF 10)**

Blank.zfx

Property Address: _____ 1906 El Camino Real, Menlo Park CA 94027 _____ Date: 10/31/2014

**6. SELLER DISCLOSURES:**

**A. NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 17, if required by Law: **(i)** deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; **(ii)** even if exempt from the obligation to provide an NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**B. ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 17, Seller shall provide to Buyer, in writing, the following disclosures, documentation and information:

   **(1) RENTAL SERVICE AGREEMENTS: (i)** All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and **(ii)** a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in these documents.

   **(2) INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

   **(3) ☑ TENANT ESTOPPEL CERTIFICATES:** (If checked) Tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: **(i)** that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); **(ii)** that no lessor defaults exist; and **(iii)** stating the amount of any prepaid rent or security deposit.

   **(4) SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.

   **(5) PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

   **(6) STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

   **(7) GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

   **(8) VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.

   **(9) MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: **(i)** any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; **(ii)** any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and **(iii)** that any tenant of the Property is the subject of a bankruptcy.

**7. ☐ ENVIRONMENTAL SURVEY** (If checked): Within n/a none_____ **Days** After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by ☐ Buyer ☐ Seller. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement.

**8. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**

**A. SELLER HAS: 7 (or ☐ _____ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or located in a planned unit development or other common interest subdivision.

**B.** If Property is a condominium, or located in a planned unit development or other common interest subdivision, Seller has **3 (or ☐ _____ ) Days** After Acceptance to request from the OA (C.A.R. Form HOA): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the OA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of OA minutes for regular and special meetings; and **(v)** the names and contact information of all OA's governing the Property. (Collectively, "CI Disclosures.") Seller shall itemize and deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 17.

**9. SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

**10. CHANGES DURING ESCROW:**

**A.** Prior to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 17: **(i)** rent or lease any vacant unit or other part of the premises; **(ii)** alter, modify, or extend any existing rental or lease agreement; **(iii)** enter into, alter, modify or extend any service contract(s); or **(iv)** change the status of the condition of the Property.

**B.** At least **7 (or ☐ _____ ) Days** prior to any Proposed Changes, Seller shall give written notice to Buyer of any Proposed Changes.

<table>
<tr><td>Buyer's Initials ( E.F. ) ( _____ )</td></tr>
<tr><td>Seller's Initials ( _____ ) ( _____ )</td></tr>
<tr><td>Reviewed by _____ Date _____</td></tr>
</table>



Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 3 OF 10)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 10)**

Blank.zfx

Property Address: _____1906 El Camino Real, Menlo Park CA 94027_____ Date: _10/31/2014_

**11. CONDITIONS AFFECTING PROPERTY:**

**A.** Unless otherwise agreed: **(i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

**B. SELLER SHALL, within the time specified in paragraph 17, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW.**

**C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 17, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.**

**12. ITEMS INCLUDED AND EXCLUDED:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 12B or C.

**B. ITEMS INCLUDED IN SALE:**

**(1)** All EXISTING fixtures and fittings that are attached to the Property.

**(2)** Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms.

**(3)** A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 17.

**(4)** Seller represents that all items included in the purchase price, unless otherwise specified, owned by Seller. Within the time specified in paragraph 17, Seller shall give Buyer a list of fixtures not owned by Seller.

**(5)** Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.

**(6)** As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

**C. ITEMS EXCLUDED FROM SALE:** all fixtures  in the vacant units as of today to be included
_____

**13. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer's acceptance of the condition of, and any other matter affecting the Property is a contingency of this Agreement, as specified in this paragraph and paragraph 17. Within the time specified in paragraph 17, Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms; **(iii)** confirm the insurability of Buyer and the Property; and **(iv)** satisfy Buyer as to any matter of concern to Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations; or **(ii)** inspections by any governmental building or zoning inspector, or government employee, unless required by Law.

**B.** Buyer shall complete Buyer Investigations and, as specified in paragraph 17, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make Property available for all Buyer Investigations. Seller shall have water, gas, electricity, and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

**14. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of receipts and statements to Buyer prior to final verification of condition.

**15. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** Repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( ___٨٨٨٨__ ) ( _____ )

| Reviewed by _____ Date _____ |

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 4 OF 10)**


EQUAL HOUSING OPPORTUNITY

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 4 OF 10)**                    Blank.zfx

Property Address: _____ 1906 El Camino Real, Menlo Park CA 94027 _____ Date: 10/31/2014

**16. TITLE AND VESTING:**

**A.** Within the time specified in paragraph 17, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 17.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

**C.** Within the time specified in paragraph 17, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**E.** Buyer shall receive a standard coverage owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**17. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).**

**A. SELLER HAS: 7 (or ☐ _____ ) Days** After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 5, 6A and B, 8A, 11B, 12B (3) and (4) and 16.

**B. BUYER HAS: 17 (or ☐ 5 _____ ) Days** After Acceptance, unless otherwise agreed in writing, to:

**(1)** Complete all Buyer Investigations; approve all disclosures, reports and other applicable Information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 6 and insurability of Buyer and the Property).

**(2)** Within the time specified in 17B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

**(3)** By the end of the time specified in 17B(1) (or 2J for loan contingency or 2K for appraisal contingency), Buyer shall remove, in writing, the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if the following inspections, reports or disclosures are not made within the time specified in 17A, then Buyer has **5 (or ☐ _____ ) Days** after receipt of any such items, or the time specified in 17B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing: **(i)** government-mandated inspections or reports required as a condition of closing; **(ii)** Common Interest Disclosures pursuant to paragraph 8B; **(iii)** a subsequent or amended disclosure pursuant to paragraph 9; **(iv)** Proposed Changes pursuant to paragraph 10B; and **(v)** environmental survey pursuant to paragraph 7.

**C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

**(1) Seller right to Cancel: Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in the Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow in time may be a breach of this Agreement.

**(2) Continuation of Contingency:** Even after the expiration of the time specified in 17B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 17C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 17C(1).

**(3) Seller right to Cancel: Buyer Contract Obligations:** Seller, after first giving a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: **(i)** if Buyer fails to deposit funds as required by 2A or 2B; **(ii)** if the funds deposited pursuant to 2A or 2B are not good when deposited; **(iii)** if Buyer fails to provide a letter as required by 2H; **(iv)** if Buyer fails to provide verification as required by 2I or 2M; or **(v)** if Seller reasonably disapproves of the verification provided by 2I or 2M. **Seller is not required to give Buyer a Notice to Perform regarding Close Of Escrow.**

**(4) Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall **(i)** be in writing; **(ii)** be signed by Seller and **(iii)** give Buyer at least **24 (or ☐ _____ ) hours** (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than **2 Days** Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel the Agreement or meet an 17C(3) obligation.

**D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility, and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

Buyer's Initials ( E.F. ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
| Reviewed by _____ Date _____ |

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 5 OF 10)**



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 5 OF 10)**          Blank.zfx

Property Address: _____ 1906 El Camino Real, Menlo Park CA 94027 _____ Date: 10/31/2014

**E. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award.**

18. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within **5 (or** 0 _____ **)** **Days** Prior to Close Of Escrow, **NOT AS A CONTINGENCY OF THE SALE,** but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11A; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement.

19. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: **(i)** Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; **(ii)** Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; **(iii)** Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and **(iv)** Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

20. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

21. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.**

| Buyer's Initials _____ / ef_____ | Seller's Initials _____ / _____ |
|---|---|

22. **DISPUTE RESOLUTION:**

**A. MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 22B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

**B. ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 22B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of real estate transactional Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**

**(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: **(i)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; **(ii)** an unlawful detainer action; **(iii)** the filing or enforcement of a mechanic's lien; and **(iv)** any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

**(3) BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 22A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

| Buyer's Initials ( E.F._____ ) ( _____ ) |
|---|
| Seller's Initials ( _____ ) ( _____ ) |
| Reviewed by _____ Date _____ |

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 6 OF 10)



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 6 OF 10)**

Blank.zfx

Property Address: _____1906 El Camino Real, Menlo Park CA 94027_____ Date: _10/31/2014_

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES 'PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION,YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Buyer's Initials _e.f._ / _____ | Seller's Initials _ʅ ʊ ʊ_ / _____ |
|---|---|

23. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.

24. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

25. **COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

26. **NOTICES:** Whenever notice is given under this Agreement, each notice shall be in writing, and shall be delivered personally, by facsimile, or by mail, postage prepaid. Notice shall be delivered to the address set forth below the recipient's signature of acceptance. Either party may change its notice address by providing notice to the other party.

27. **AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, ByLaws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.

28. **GOVERNING LAW:** This Agreement shall be governed by the Laws of the state of California.

29. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

30. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Form AS).

31. **MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM:** If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.

32. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local antidiscrimination Laws.

33. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the nonprevailing Buyer or Seller, except as provided in paragraph 22A.

34. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

35. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 7 OF 10)**

| Buyer's Initials ( _e.f._____ ) ( _____ ) |
|---|
| Seller's Initials ( _ʅʊʊ_ ) ( _____ ) |
| Reviewed by _____ Date _____ |



Blank.zfx

Property Address: _____ 1906 El Camino Real, Menlo Park CA 94027 _____ Date: 10/31/2014

**36. OTHER TERMS AND CONDITIONS,** including attached supplements:
   A. ☐  Buyer Inspection Advisory (C.A.R. Form BIA)
   B. ☐  Seller Financing Addendum and Disclosure (C.A.R. Form SFA)
   C. ☐  Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____ )
   D. ☐  Buyer Intent To Exchange Supplement (C.A.R. Form BES)
   E. ☐  Seller Intent to Exchange Supplement (C.A.R. Form SES)
   F. ☐  buyer has 5 days contingency for inspections only, no loan or appraisal contingency
        current rental agency agreement to be terminated at sellers' expense at COE
        selling (buyer procuring broker) comission is 1.5% of the purchase price payable by the seller at COE to Peninsula
        Company
        buyer to receive confirmation of the bankruptcy court within 30 days of the offer acceptance
        buyer to receive free and clear insurable title at COE  plus with all delinquent  real estate taxes paid off
        if bankruptcy court's approval is not received within 30 days, buyer can obtain his deposit back from escrow without
        the need for the sellers' signature
        _____
        _____

**37. DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with this offer or a final counter offer.
   B. **"Agreement"** means the terms and conditions of this accepted Commercial Property Purchase Agreement and any accepted counter offers and addenda.
   C. **"C.A.R. Form"** means the specific form referenced, or another comparable form agreed to by the parties.
   D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
   E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   F. **"Days"** means calendar days, unless otherwise required by Law.
   G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either one to modify or alter the content or integrity of the Agreement without the knowledge and consent of the other.
   J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours **(or as otherwise specified in paragraph 17C(4))** to remove a contingency or perform as applicable.
   L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications and retrofitting of the Property provided for under this Agreement.
   M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
   N. **Singular and Plural** terms each include the other, when appropriate.
**38. BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.
**39. AGENCY:**
   A. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
        Listing Agent _____ (Print Firm Name) is the agent
        of (check one): ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
        Selling Agent Peninsula Company _____ (Print Firm Name) (if not same
        as Listing Agent) is the agent of (check one): ■ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

Buyer's Initials ( E.F. ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 8 OF 10)



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 8 OF 10)**

Blank.zfx

Property Address: _____ 1906 El Camino Real, Menlo Park CA 94027 _____ Date: 10/31/2014

**40. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

   **A.** **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 5, 16, 17E, 29, 30, 35, 36B-F, 37, 40, 42, 45A, 46 and paragraph D of the section titled Real Estate Broker on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 42 or 45A, or paragraph D of the section titled Real Estate Broker on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

   **B.** A Copy of this Agreement shall be delivered to Escrow Holder within **3** business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

   **C.** Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraphs 42, 45A and paragraph D of the section titled Real Estate Broker on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 42 and 45A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: **(i)** if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

   **D.** A Copy of any amendment that affects any paragraph for which Escrow Holder is responsible shall be delivered to Escrow Holder within **2** business days after mutual execution of the amendment.

**41. SCOPE OF BROKER DUTY:** Buyer and Seller acknowledge and agree that: Brokers: **(i)** do not decide what price Buyer should pay or Seller should accept; **(ii)** do not guarantee the condition of the Property **(iii)** do not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** shall not be responsible for identifying defects that are not known to Broker(s); **(v)** shall not be responsible for inspecting public records or permits concerning the title or use of the Property; **(vi)** shall not be responsible for identifying location of boundary lines or other items affecting title; **(vii)** shall not be responsible for verifying square footage, representations of others or information contained in inspection reports, MLS or PDS, advertisements, flyers or other promotional material, unless otherwise agreed in writing; **(viii)** shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller in the course of this representation; and **(ix)** shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**42. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, **Buyer** agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**43. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**44. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by Maria Rutenburg _____ , who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (**OR,** if checked ☐ by 11/1/2014 _____ (date), at 7 _____ ☐ AM ☒ PM).

Buyer  Eugene Fooksman _____
By _____ Date 10/31/2014 _____
Print name  Eugene Fooksman, the trustor of the Rum Raisins Trust _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Buyer  _____
By _____ Date _____
Print name  _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 9 OF 10)**

Buyer's Initials ( _E.F.____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

EQUAL HOUSING
OPPORTUNITY

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 9 OF 10)**                    Blank.zfx

Property Address: _____ 1906 El Camino Real, Menlo Park CA 94027 _____ Date: 10/31/2014 _____

**45. BROKER COMPENSATION FROM SELLER:**
    **A.** Upon Close Of Escrow, **Seller** agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
    **B.** If escrow does not close, compensation is payable as specified in that separate written agreement.

**46. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
    ☐ (If checked) **SUBJECT TO ATTACHED COUNTER OFFER, DATED** _____ .

Seller _____
By _Atherton Financial Building LLC_____ Date _10/31/2014_____
Print name _____
Address _1906 El Camino Real_____ City _Menlo Park_____ State _CA_ Zip _94027____
Telephone _____ Fax _____ E-mail _____

Seller _____
By _____ Date _____
Print name _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____

( _____ / _____ ) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's
(Initials) authorized agent on (date) _____ at _____ ☐ AM ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
    **A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
    **B. Agency relationships are confirmed as stated in paragraph 39 above.**
    **C.** If specified in paragraph 2A, Agent who submitted offer for Buyer acknowledges receipt of deposit.
    **D. COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: **(i)** the amount specified in the MLS or PDS, provided Cooperating Broker is a Participant of the MLS or PDS in which the property is offered for sale or a reciprocal MLS or PDS; or **(ii)** ☒ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) _Peninsula Company_____ DRE Lic. # _____
By _Maria Rutenburg_____ DRE Lic. # _1311300___ Date _10/31/2014___
Address _2342 California St Suite 3_____ City _Mountain View__ State _CA_ Zip _94040___
Telephone _6507434915_____ Fax _6506463722_____ E-mail _maria@peninsulacompany.com_____

Real Estate Broker (Listing Firm) _____ DRE Lic. # _____
By _____ DRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 40 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

---

( _____ / _____ )    **REJECTION OF OFFER:** No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's Initials)       (Date)

---

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
® 525 South Virgil Avenue, Los Angeles, California 90020

**CPA REVISED 10/02 (PAGE 10 OF 10)**

Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 10 OF 10)**

Blank.zfx

CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 4/12)

**No.** *1*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☒ Commercial Property Purchase Agreement, ☐ Other _____,

dated ___*October 31, 2014*___ , on property known as _____*1906 El Camino Real*_____

___*Menlo Park, CA  94027*___ ,

in which _____*Rum Raisins land Trust*_____ is referred to as ("Buyer/Tenant")

and _____*Atherton FinancialBuilding LLC*_____ is referred to as ("Seller/Landlord").

*Seller is responsible for terminating current  leasing agreement and property management*
*agreement at sellers own expense.*

*Seller is responsible for terminating the current Listing/Leasing Agreement with Intero*
*Real Estate and Property Management Agreement with Guggenheim Realty at Seller's own*
*expense.*

*Due to Chapter 11 Bankruptcy proceeding, a motion needs to be filed to approve the sale*
*and have the bankruptcy court approve the sale.*

*Escrow can close three (3) days after the entry of order approving the sale.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____   Date ___10/31/2014___

Buyer/Tenant ___*Rum Raisins land Trust*___   Seller/Landlord ___*Atherton FinancialBuilding LLC*___

Buyer/Tenant _____   Seller/Landlord _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2012, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 4/12 (PAGE 1 OF 1)**

Reviewed by _____ Date _____

EQUAL HOUSING
OPPORTUNITY

**ADDENDUM (ADM PAGE 1 OF 1)**

| Agent:  Yuan-Sing Chang | Phone: (408)863-3039 | Fax: | Prepared using zipForm® software |
| Broker: Intero Real Estate Services, 12900 Saratoga Avenue Saratoga, CA 95070 | | | |

# EXHIBIT "B"

INCOMING     **Automated Wire Transfer Information**     INCOMING

Wire ID   1294946                          Printed On:  11/4/2014   At:  2:08:41 PM

Escrow Number:       **0626026289**     Amount:  **500,000.00**

Wire Date/Time (PST):   **11/4/2014 4:40:00 PM**

Fed Ref Number:      **20141104I1B7031R037966**

Bank:                **Comerica**

Bank Account Number:  **1892529965**     Last Update Date:

                                         Last Update By:

County:    **Santa Clara County**

Branch:    **Palo Alto**

Other Information:

   Trans Type: CREDIT    Posted Date: 2014-11-04
   BankId Type: ABA    BankId:   121137522
   Sending Bank: 121000248  WELLS FARGO SF
   Sending Bank Reference: 2014110400123811
   Receiving Bank: 121137522  COMERICA SCO VLY
   Receiving Bank Info: CREDIT TO THE ACCOUNT OF, OLD REPUBLIC TITLE
   COMPANY ESCROW, NUM BER 0626026289-JG
   Beneficiary: ACCT-1892529965, OLD REPUBLIC TITLE COMPANY, 2321
   ROSECRANS AVE., STE. 5000, EL SEGUNDO, CA 90245 US
   Originator: ACCT-****7418, EUGENE FOOKSMAN ~~OF ORTEGA AVE MOU~~
   ~~AIN VIEW CA 94040~~
   OriginatortoBeneficiaryInfo: CREDIT TO THE ACCOUNT OF OLD, REPUBLIC
   TITLE COMPANY ESCROW, NUMBER 0626026289-JG
   Bank To Bank Info: *** NO DATA PROVIDED ***
   OMAD Info: 20141104L1LF994C00162511041640FT03
   IMAD Info: 20141104I1B7031R037966

---

| OLD REPUBLIC TITLE COMPANY | | ESCROW TRUST RECEIPT NO. | | 134642 | |
|---|---|---|---|---|---|
| 1 Lytton Avenue, Suite 100 . Palo Alto, CA . 94301 . (650) 321-0510 . (650) 403-4008 | | COMPANY | 06 | OFFICE | 26 |

| | ESCROW NO. 0626026289-JG | DATE 11/4/2014 |
|---|---|---|
| RECEIVED OF | | RECEIVABLE NO. |

RECEIVED OF
EUGENE FOOKSMAN FBO THE RUM RAISINS TRUST

Property: 1906 El Camino Real Menlo Park, CA 94027

FIVE HUNDRED THOUSAND AND 00/100---                    DOLLARS $500,000.00

| CASH | CASHIER'S CHECK | | CHECK | | RECEIVED AFTER BANKING HOURS Y/N? | N |
|---|---|---|---|---|---|---|
| WIRE  X | CK# | | CK# | | | |
| | CKS | | CKS | | | |
| TRN | ABA# | | ABA# | | | |
| CHECKING ACCOUNT NO. | | | | | BY  Jacqueline Griffin | |

# EXHIBIT "C"

**ORDER NO.** : 0626026289-JG

# EXHIBIT A

The land referred to is situated in the County of San Mateo, City of Menlo Park, State of California, and is described as follows:

Lots, 2, 3, 4, and 5 in Block "C", as shown on that certain Map entitled, "Map of Menlo Park Villa Lots, San Mateo County, California", filed in the Office of the County Recorder of San Mateo County, State of California on June 14, 1888, in Volume 6 of Micscellaneous Records at Page 295, and copied into Book 1 of Maps at Page 93.

APN: 060-333-410
Formerly 060-333-150 and 060-333-160
JPN: 060-033-333-15A and 16A



**OLD REPUBLIC**
T I T L E   C O M P A N Y

361 Lytton Avenue, Suite 100
Palo Alto, CA 94301
(650) 321-0510   Fax: (650) 321-2973

# PRELIMINARY REPORT

Our Order Number  0626026289-JG

PENINSULA COMPANY
2342 California Street, Suite 3
Mountain View, CA 94040

Attention: MARIA RUTENBURG

When Replying Please Contact:

Jacqueline Griffin
jgriffin@ortc.com
(650) 321-0510

Buyer:
THE RUM RAISINS TRUST

Property Address:

1906 El Camino Real, Menlo Park, CA 94027

In response to the above referenced application for a policy of title insurance, OLD REPUBLIC TITLE COMPANY, as issuing Agent of Old Republic National Title Insurance Company, hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said Policy or Policies are set forth in Exhibit I attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the Homeowner's Policy of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit I. Copies of the Policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit I of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**
**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of  October 3, 2014, at 7:30 AM

**OLD REPUBLIC TITLE COMPANY**
For Exceptions Shown or Referred to, See Attached

ORT 3158-A (Rev. 08/07/08)

OLD REPUBLIC TITLE COMPANY
ORDER NO. 0626026289-JG

The form of policy of title insurance contemplated by this report is:

CLTA Standard Coverage Policy -1990; AND ALTA Loan Policy - 2006. A specific request should be made if another form or additional coverage is desired.

The estate or interest in the land hereinafter described or referred or covered by this Report is:

Fee

Title to said estate or interest at the date hereof is vested in:

Atherton Financial Building, LLC, a California limited liability company, subject to proceedings pending in U.S. Bankruptcy Court of the Central District of California, entitled: Atherton Financial Building, LLC and David & Cathy Tsang, Debtor, Case No. 2:14-bk-27223-TD, wherein a petition for relief was filed on the date of September 9th, 2014 (Chapter 11).

The land referred to in this Report is situated in the County of San Mateo, CITY of Menlo Park, State of California, and is described as follows:

Lots, 2, 3, 4, and 5 in Block "C", as shown on that certain Map entitled, "Map of Menlo Park Villa Lots, San Mateo County, California", filed in the Office of the County Recorder of San Mateo County, State of California on June 14, 1888, in Volume 6 of Micscellaneous Records at Page 295, and copied into Book 1 of Maps at Page 93.

APN: 060-333-410
Formerly 060-333-150 and 060-333-160
JPN: 060-033-333-15A and 16A

At the date hereof exceptions to coverage in addition to the Exceptions and Exclusions in said policy form would be as follows:

1.      Taxes and assessments, general and special, for the fiscal year 2014 - 2015, as follows:

| | | | |
|---|---|---|---|
| Assessor's Parcel No | : | 060-333-410 | |
| Code No. | : | 08-083 | |
| 1st Installment | : | $42,489.77 | NOT Marked Paid |
| 2nd Installment | : | $42,489.77 | NOT Marked Paid |
| Land Value | : | $3,278,818.00 | |
| Imp. Value | : | $4,098,523.00 | |

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
ORDER NO. 0626026289-JG

2.      Said property having been declared tax defaulted for non-payment of delinquent taxes for
        the fiscal year 2013 - 2014, and subsequent delinquencies

        Amount to redeem by November 30, 2014, for the above stated year (and subsequent years,
        if any) is $96,756.39.

                        and by December 31, 2014        :  is $97,990.62
                        and by January 31, 2015         :  is $99,224.85

        Assessor's Parcel No.      :    060-333-410

3.      The lien of supplemental taxes, if any, assessed pursuant to the provisions of Section 75, et
        seq., of the Revenue and Taxation Code of the State of California.

4.      An easement affecting that portion of said land and for the purposes stated herein and
        incidental purposes as provided in the following

        Instrument       :   Limited, Non-exclusive Easement
        Granted To       :   Marjorie J. Yates and James J. Yates, wife and husband as
                             community property with right of survivorship
        For              :   Limited Ingress and egress
        Recorded         :   July 17, 2007 in Official Records under Recorder's Serial Number
                             2007-107826

             Note: Reference is made to said instrument for full particulars.

             The present ownership of said easement and other matters affecting the interests
             thereto, if any, are not shown herein.

5.      Matters as contained or referred to in an instrument,

        Entitled         :   Stormwater Treatment Measures Construction and Maintenance
                             Agreement
        Executed By      :   The City of Menlo Park and 1906 ECR, LLC
        Dated            :   May 17, 2011
        Recorded         :   June 23, 2011 in Official Records under Recorder's Serial Number
                             2011-070681

        Returned to
        Address          :   P.O. Box 7838, Menlo Park, CA 94026

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
ORDER NO.  0626026289-JG

6.       Deed of Trust to secure an indebtedness of the amount stated below and any other amounts
         payable under the terms thereof,

Amount                    :   $2,892,500.00
Trustor/Borrower          :   SC Project Management LLC, a California limited liabilty company
Trustee                   :   Bank SinoPac, Los Angeles Branch
Beneficiary/Lender        :   Bank SinoPac, Los Angeles Branch
Dated                     :   November 22, 2011
Recorded                  :   December 2, 2011 in Official Records under Recorder's Serial
                              Number 2011-146981
Returned to               :   355 South Grand Avenue, Suite 4168, Los Angeles, CA 90071

         In Connection therewith, said trustors executed an Assignment of Rents,

Dated                     :   November 22, 2011
Recorded                  :   December 2, 2011 in Official Records under Recorder's Serial
                              Number 2011-146982
Returned to
Address                   :   355 South Grand Avenue, Suite 4168, Los Angeles, CA 90071

         Hazardous Substances Certificate and Indemnity Agreement, pertaining to said Deed
         of Trust executed by SC Project Management LLC and Bank SinoPac Los Angeles
         Branch.

Dated                     :   November 22, 2011
Recorded                  :   December 2, 2011 in Official Records under Recorder's Serial
                              Number 2011-146983
Returned to
Address                   :   355 South Grand Avenue, Suite 4168, Los Angeles, CA 90071

         Modification/amendment of the terms of said Deed of Trust, by an instrument

Entitled                  :   Modification of Deed of Trust
Executed By               :   Atherton Financial Building LLC, a California limited liability
                              company and Bank SinoPac Los Angeles Branch
Dated                     :   June 15, 2012
Recorded                  :   July 12, 2012 in Official Records under Recorder's Serial
                              Number 2012-098269
Returned to
Address                   :   355 South Grand Avenue, Suite 4168, Los Angeles, CA 90071

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
ORDER NO.  0626026289-JG

7.      A financing statement given as additional security for the payment of the indebtedness
        secured by the Deed of Trust

        Debtor              :    SC Project Management LLC
        Secured Party       :    Bank SinoPac Los Angeles Branch
        In the Office of    :    San Mateo County Recorder
        Recorded            :    December 2, 2011 in Official Records under Recorder's Serial Number
                                 2011-146984

        Returned to
        Address             :    355 South Grand Avenue, Suite 4168, Los Angeles, CA 90071


8.      A financing Statement filed/recorded in the office of the County Recorder, showing

        Debtor              :    Atherton Financial Building, LLC
        Secured Party       :    Bank SinoPac Los Angeles Branch
        In Office of        :    San Mateo County Recorder
        Recorded            :    September 12, 2012 in Official Records under Recorder's Serial
                                 Number 2012-131227
        Return Address      :    355 S. Grand Avenue, Suite 4168, Los Angeles, CA 90071
        Property Covered    :    All Fixtures


9.      An easement affecting that portion of said land and for the purposes stated herein and
        incidental purposes as provided in the following

        Instrument          :    Public Access Easement
        Granted To          :    The City of Menlo Park, a municipal corporation
        For                 :    Right of way for public access purposes, including the right of ingress
                                 and egress
        Dated               :    July 17, 2012
        Recorded            :    September 27, 2012 in Official Records under Recorder's Serial
                                 Number 2012-140774


        Note: Reference is made to said instrument for full particulars.


10.     Matters as contained or referred to in an instrument,

        Entitled            :    Public Access Easement
        Executed By         :    Atherton Financial Building, LLC, a California limited liability company
        Dated               :    July 17, 2012
        Recorded            :    September 27, 2012 in Official Records under Recorder's Serial
                                 Number 2012-140774
        Returned to
        Address             :    701 Laurel Street, Menlo Park, CA 94025

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
ORDER NO. 0626026289-JG

11.     Deed of Trust to secure an indebtedness of the amount stated below and any other amounts
        payable under the terms thereof,

| | | |
|---|---|---|
| Amount | : | $5,500,000.00 |
| Trustor/Borrower | : | Atherton Financial Building, LLC |
| Trustee | : | Title 365 |
| Beneficiary/Lender | : | David Tsang and Cathy Chen Ling Tsang |
| Dated | : | October 23, 2012 |
| Recorded | : | November 7, 2012 in Official Records under Recorder's Serial Number 2012-164389 |
| Returned to | : | 758 Loyola Drive, Los Altos, CA 94024 |

Substitution of Trustee under said Deed of Trust,

| | | |
|---|---|---|
| Executed By | : | David Tsang and Cathy Chen Ling Tsang |
| New Trustee | : | First American Title Insurance Company |
| Dated | : | May 6, 2014 |
| Recorded | : | May 8, 2014 in Official Records under Recorder's Serial Number 2014-039323 |
| New Trustee's File No. | : | 668436 |
| Returned to Address | : | 4380 La Jolla Village Drive, Ste. 110, San Diego, CA 92122 |

Notice of Default under the terms of said Deed of Trust,

| | | |
|---|---|---|
| Executed By | : | First American Title Insurance Company |
| Dated | : | May 7, 2014 |
| Recorded | : | May 8, 2014 in Official Records under Recorder's Serial Number 2014-039324 |
| Trustee's File No. or Foreclosure No. | : | 668436 |
| Returned to Address | : | 4380 La Jolla Village Drive, Ste. 110, San Diego, CA 92122 |

Notice of Trustee's Sale under said Deed of Trust,

| | | |
|---|---|---|
| Executed By | : | First American Title Insurance Company |
| Dated | : | August 11, 2014 |
| Recorded | : | August 12, 2014 in Official Records under Recorder's Serial Number 2014-072367 |
| Trustee's No. | : | 668436 |
| Sale Date | : | September 10, 2014 |
| Returned to Address | : | 4380 La Jolla Village Drive, Ste. 110, San Diego, CA 92122 |

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
**ORDER NO.**  0626026289-JG

12.    Claim of Lien for labor materials and/or services furnished as follows:

By                          :    Golden State Marble & Granite Inc.
Amount                  :    $5,000.00
For                         :    Fabricate the Granite & Quartez, Install the New Counter Top to
                                    completed
At request of or
contract with          :    North American Asset Management Corp.
Dated                    :    September 25, 2013
Recorded               :    September 25, 2013 in Official Records under Recorder's Serial
                                    Number 2013-138080
Returned to
Address                 :    114 South Amplette Blvd., San Mateo, CA 94401


13.    Claim of Lien for labor materials and/or services furnished as follows:

By                          :    Golden State Market & Granite Inc.
Amount                  :    $5,000.00
For                         :    Fabricate the Granite & Quartz Slabs, Install the new counter top to
                                    completed
At request of or
contract with          :    North American Asset Management Corp.
Dated                    :    September 27, 2013
Recorded               :    September 27, 2013 in Official Records under Recorder's Serial
                                    Number 2013-139120
Returned to
Address                 :    114 South Amphlett Blvd., San Mateo, CA 94401


14.    Prior to the issuance of any policy of title insurance, the Company will require the following
        with respect to Atherton Financial Building, LLC, a California Limited Liability Company:

    1.    A copy of any management or operating agreements and any amendments thereto,
            together with a current list of all members of said LLC.

    2.    A certified copy of its Articles of Organization (LLC-1), any Certificate of Correction
            (LLC-11), Certificate of Amendment (LLC-2), or Restatement of Articles of Organization
            (LLC-10).

    3.    Recording a Certified copy of said LLC-1 and any "amendments thereto".

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
ORDER NO. 0626026289-JG

15.    Provisions of the Bankruptcy Reform Act of 1978, as amended, and of the terms, conditions
and provisions of any Order which may be entered in the following:

    Case No.        :    2:14-bk-27223-TD
    District        :    Central
    Debtor          :    Atherton Financial Building, LLC
    Chapter         :    11

16.    NOTE: Said case appears to be filed in Los Angeles.

17.    NOTE: An examination of this case file is being made. Upon completion, we will supplement
our report accordingly.

18.    Any defect or invalidity in the title to said land arising out of or occasioned by any claim of a
violation of the provisions of the "residence in foreclosure" or "foreclosure consultant" laws
(California Civil Code Sections 1695 et. seq. and/or 2945 et. seq.).

19.    The requirement that this Company be provided with an opportunity to inspect the land (the
Company reserves the right to make additional exceptions and/or requirements upon
completion of its inspection).

20.    The requirement that this Company be provided with a suitable Owner's Declaration (form
ORT 174). The Company reserves the right to make additional exceptions and/or
requirements upon review of the Owner's Declaration.

21.    Any unrecorded and subsisting leases.

22.    Any facts, rights, interests, or claims that are not shown by the Public Records but that could
be ascertained by an inspection of the Land or that may be asserted by persons in
possession of the Land.


-------------------- Informational Notes --------------------

A.    The applicable rate(s) for the policy(s) being offered by this report or commitment appears
to be section(s) 1.1 and 2.1.

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
ORDER NO.  0626026289-JG

B.    The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented to reflect the following additional items relating to the issuance of an American Land Title Association loan form policy:

NONE

NOTE: Our investigation has been completed and there is located on said land a commercial building known as 1906 El Camino Real, Menlo Park, CA 94027.

The ALTA loan policy, when issued, will contain the CLTA 100 Endorsement and 116 series Endorsement.

Unless shown elsewhere in the body of this report, there appear of record no transfers or agreements to transfer the land described herein within the last three years prior to the date hereof, except as follows:

Grant Deed executed by 1906 ECR, LLC, a California limited liability company to SC Project Management, LLC, a California limited liability company recorded December 2, 2011 in Official Records under Recorder's Serial Number 2011-146980.

Grant Deed executed by Atherton Financial Building, LLC, formerly known as SC Project Management, LLC to Atherton Financial Building, LLC, a California limited liability company recorded July 16, 2012 in Official Records under Recorder's Serial Number 2012-099241.

C.    Effective September 1st, 2014, recording charges include a $20.00 recording service fee plus the recording charge for the types of transactions listed below:

Finance transactions - $95.00 average recording charge to record all documents necessary to close and issue the required title insurance policy(ies).

Sale transactions - $110.00 average recording charge to record all documents necessary to close and issue the required title insurance policy(ies).

Commercial transactions - actual charges required by the County Recorder.

All Cash transactions - actual charges required by the County Recorder to record all cash, 1-4 sale transactions wherein no new deed of trust is recorded.

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
ORDER NO.  0626026289-JG

If you anticipate having funds wired to Old Republic Title Company, our wiring information is as follows: Comerica Bank, 2321 Rosecrans Ave., Ste. 5000, El Segundo CA 90245, credit to the account of Old Republic Title Company, Account Number 1892529965, ABA Number 121137522.

When instructing the financial institution to wire funds, it is very important that you reference Old Republic Title's Order Number 0626026289.

**PLEASE CONTACT YOUR ESCROW OFFICER IF YOU RECEIVE NOTICE OF A CHANGE TO THESE WIRE INSTRUCTIONS**

**ON-LINE BANKING TRANSFERS ARE NOT THE SAME**

"Electronic Funds Transfer" is a generic term for funds transfers, one of which is an ACH Transfer.  On-line banking transfers are often completed through an ACH Transfer, not a Wire Transfer.  Old Republic Title <u>rejects</u> all ACH Transfers and <u>returns</u> the funds to the sender (Government Entities/Agencies excluded.)  Close of Escrow may be significantly delayed as a result of an ACH Transfer.

**OLD REPUBLIC TITLE DOES NOT AUTHORIZE FUNDS TO BE DEPOSITED DIRECTLY INTO OUR ACCOUNT AT Comerica Bank LOCAL BRANCH LOCATIONS**

Funds deposited directly into an account of Old Republic Title Company at a Comerica Bank branch are subject to verification.  Verification of unauthorized deposits is not immediate or automated following deposit.  Delay in credit of funds to an escrow and delay in Close of Escrow may result.

If you want to transfer funds by Wire Transfer from a non-United States financial institution, or have questions with regard to acceptable funds, please contact your Escrow or Title Officer immediately.

ORT 3158-B

Exhibit I

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY - 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.     (a)     Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or {iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.-

     (b)     Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.     Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.     Defects, liens, encumbrances, adverse claims or other matters:

     (a)     whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

     (b)     not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;.

     (c)     resulting in no loss or damage to the insured claimant;

     (d)     attaching or created subsequent to Date of Policy: or

     (e)     resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.     Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land Is situated.

5.     Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.     Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.     Taxes or assessments Which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

     Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.     Any facts, rights, interests, or claims Which are not shown by the public records but which could be ascertained by an inspection of the land which may be asserted by persons in possession thereof,

3.     Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4.     Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.     (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.     Any lien or right to a lien for services, labor or material not shown by the public records.

Exhibit I

### AMERICAN LAND TITLE ASSOCIATION
### LOAN POLICY OF TITLE INSURANCE - 2006
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
       (i)    the occupancy, use, or enjoyment of the Land;
       (ii)      the character, dimensions, or location of any improvement erected on the Land;
       (iii)     the subdivision of land; or
       (iv)     environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
  (b)   Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.   Defects, liens, encumbrances, adverse claims, or other matters
  (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
  (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
  (c)   resulting in no loss or damage to the Insured Claimant;
  (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
  (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
  (a)   a fraudulent conveyance or fraudulent transfer, or
  (b)   a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

### EXCEPTIONS FROM COVERAGE – SCHEDULE B, PART 1, SECTION ONE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1.   (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records: (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.   Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.   Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.   (a) Unpatented mining claims: (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof: (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.   Any lien or right to a lien for services, labor or material not shown by the public records.

**Old Republic Title Company**

**Privacy Policy Notice**

## PURPOSE OF THIS NOTICE

Title V of the Gramm-Leach-Bliley Act (GLBA) generally prohibits any financial institution, directly or through its affiliates, from sharing nonpublic personal information about you with a nonaffiliated third party unless the institution provides you with a notice of its privacy policies and practices, such as the type of information that it collects about you and the categories of persons or entities to whom it may be disclosed. In compliance with the GLBA, we are providing you with this document, which notifies you of the privacy policies and practices of Old Republic Title Company

We may collect nonpublic personal information about you from the following sources:

Information we receive from you such as on applications or other forms.
Information about your transactions we secure from our files, or from [our affiliates or] others.
Information we receive from a consumer reporting agency.
Information that we receive from others involved in your transaction, such as the real estate agent or lender.

Unless it is specifically stated otherwise in an amended Privacy Policy Notice, no additional nonpublic personal information will be collected about you.

We may disclose any of the above information that we collect about our customers or former customers to our affiliates or to nonaffiliated third parties as permitted by law.

We also may disclose this information about our customers or former customers to the following types of nonaffiliated companies that perform marketing services on our behalf or with whom we have joint marketing agreements:

Financial service providers such as companies engaged in banking, consumer finance, securities and insurance.
Non-financial companies such as envelope stuffers and other fulfillment service providers.

WE DO NOT DISCLOSE ANY NONPUBLIC PERSONAL INFORMATION ABOUT YOU WITH ANYONE FOR ANY PURPOSE THAT IS NOT SPECIFICALLY PERMITTED BY LAW.

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

ORT 287-C        5/07/01

## Disclosure to Consumer of Available Discounts

Section 2355.3 in Title 10 of the California Code of Regulation necessitates that Old Republic Title Company provide a disclosure of each discount available under the rates that it, or its underwriter Old Republic National Title Insurance Company, have filed with the California Department of Insurance that are applicable to transactions involving property improved with a one to four family residential dwelling.

You may be entitled to a discount under Old Republic Title Company's escrow charges if you are an employee or retired employee of Old Republic Title Company including its subsidiary or affiliated companies or you are a member in the California Public Employees Retirement System "CalPERS" or the California State Teachers Retirement System "CalSTRS" and you are selling or purchasing your principal residence.

If you are an employee or retired employee of Old Republic National Title Insurance Company, or it's subsidiary or affiliated companies, you may be entitled to a discounted title policy premium.

Please ask your escrow or title officer for the terms and conditions that apply to these discounts.

A complete copy of the Schedule of Escrow Fees and Service Fees for Old Republic Title Company and the Schedule of Fees and Charges for Old Republic National Title Insurance Company are available for your inspection at any Old Republic Title Company office.



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND ASSUMPTION AND ASSIGNMENT OF UNEXPIRED REAL PROPERTY LEASE PURSUANT TO 11 U.S.C. §§ 363 AND 365; DECLARATIONS OF BENJAMIN KIRK AND YUAN-SING CHANG IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 7, 2014**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Douglas G Boven    dboven@reedsmith.com, gsandoval@reedsmith.com
- Christopher D Crowell    ccrowell@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- David B Golubchik    dbg@lnbyb.com, dbg@ecf.inforuptcy.com;stephanie@lnbyb.com
- Jeffrey S Kwong    jsk@lnbyb.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Laura Palazzolo    laura.palazzolo@berliner.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Reed S Waddell    rwaddell@frandzel.com, efiling@frandzel.com;sking@frandzel.com

**2. SERVED BY UNITED STATES MAIL**: On **November 7, 2014**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Maria Rutenburg
Peninsula Company
930 Far Creek Way
Redwood City, CA 94062

Jacqueline Griffin
Vice President, Branch Manager
361 Lytton Avenue
Palo Alto, CA 94301

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 7, 2014**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Thomas B. Donovan **Served By Attorney Service**
United States Bankruptcy Court
255 E. Temple Street, Suite 1352 / Courtroom 1345
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 7, 2014 | Lourdes Cruz | */s/ Lourdes Cruz* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**