1
DAVID B. GOLUBCHIK (State Bar No. 185520)
JEFFREY S. KWONG (State Bar No. 288239)
2
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
4
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
5
Email: DBG@LNBYB.com; JSK@LNBYB.COM

6
Proposed Attorneys for Debtor and
7
Debtor in Possession

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

11  In re:                                    ) Case No.: 2:14-bk-27223-TD
                                              )
12  ATHERTON FINANCIAL BUILDING, LLC,         )
                                              ) Chapter 11 Case
13          Debtor and Debtor in Possession.  )
                                              ) **NOTICE OF MOTION AND MOTION**
14                                            ) **FOR ORDER: (1) AUTHORIZING THE**
                                              ) **DEBTOR TO USE CASH**
15                                            ) **COLLATERAL ON AN INTERIM**
                                              ) **BASIS; AND (2) APPROVING**
16                                            ) **STIPULATION BETWEEN THE**
                                              ) **DEBTOR AND BANK SINOPAC FOR**
17                                            ) **USE OF CASH COLLATERAL**
                                              )
18                                            )
                                              ) **MEMORANDUM OF POINTS AND**
19                                            ) **AUTHORITIES; DECLARATION OF**
                                              ) **BENJAMIN KIRK**
20                                            )
                                              ) Hearing:
21                                            ) Date:  December 3, 2014
                                              ) Time:  2:00 p.m.
22                                            ) Place: Courtroom 1345
                                              )            255 E. Temple Street
23                                            )            Los Angeles, CA 90012
                                              )
24                                            )
                                              )
25                                            )
                                              )
26                                            )
                                              )
27                                            )

28

1

1       **PLEASE TAKE NOTICE** that, on December 3, 2014, at 2:00 p.m. the Honorable

2   Thomas B. Donovan United States Bankruptcy Judge for the Central District of California (the

3   "Court"), will hold a hearing (the "Hearing") on regular notice in Courtroom 1345 of the United

4   States Bankruptcy Courthouse located at 255 East Temple Street, Los Angeles, California to

5   consider this Notice of Motion (the "Notice") and Motion for Order: (1) Authorizing the Debtor

6   to use Cash Collateral on an Interim Basis; and (2) Approving Stipulation Between the Debtor

7   and Bank SinoPac for Use of Cash Collateral (the "Motion").  This Motion is made pursuant to

8   Rules 4001-2 and 9013-1 of the *Local Bankruptcy Rules of the United States Bankruptcy Court*

9   *for the Central District of California* (the "Local Rules"), 11 U.S.C. § 363(c), and Rules 4001

10  and 9014 of the *Federal Rules of Bankruptcy Procedure* (the "Bankruptcy Rules") by Atherton

11  Financial Building, LLC ("Atherton") the debtor and debtor in possession in the above-captioned

12  chapter 11 bankruptcy case.  By way of the Motion, the Debtor respectfully requests that the

13  Court enter an order: (1) authorizing the Debtor to use cash collateral on an interim basis in

14  accordance with the Debtor's operating budget (the "Budget"), a copy which is attached as

15  **Exhibit "1"** to the declaration of Benjamin Kirk (the "Kirk Declaration") annexed to the Motion;

16  and (2) approving the Stipulation between the Debtor and Bank SinoPac (the "Stipulation"), a

17  copy of which is attached as **Exhibit "2"** to the Kirk Declaration.  The relief requested in this

18  Motion is based on this Notice, the Motion, the memorandum of points and authorities annexed

19  to the Motion, and the Kirk Declaration.

20       Pursuant to the Motion, the Debtor seeks Court authority to use cash collateral in order to

21  pay the expenses of maintaining and operating the Property, as set forth in the Budget.  The Budget

22  reflects the Property's ordinary and necessary operating expenses that must be paid postpetition to

23  preserve the Property for the benefit of the estate's creditors.  While the budget represents the

24  Debtor's best estimates of such expenses, the needs of the Property may fluctuate.  Thus, the

25  Debtor seeks authority to deviate from the line items contained in the Budget by no more than 15%

26  on a line-item basis and no more than 5% on a cumulative basis, provided the Debtor does not pay

27  expenses outside any of the categories, without the need for further Court order.

28

The Debtor submits that secured creditors (consisting of the various taxing authorities with real property tax claims, first deed of trust holders, and second deed of trust holders) are adequately protected by the use of cash collateral. Additionally, the secured creditors are protected by equity cushions as set forth in the memorandum of points and authorities.

If the Debtor is not permitted to use its cash collateral to maintain the Property, the Debtor would run into the risk of losing its only tenant on the Property and its sole source of (rental) income. This would reduce the value of the estate and potential recovery to creditors.

The Debtor further requests the Court to approve the Stipulation entered into between the Debtor and Bank SinoPac (the "Bank"), the first lienholder on the Property. The Debtor submits that the terms of the Stipulation are reasonable and appropriate under the circumstances. Because the Debtor and the Bank have consented to the use of cash collateral pursuant to the terms of the Stipulation, the Debtor respectfully submits that the requirements of 11 U.S.C. § 363(c)(2)(A) have been satisfied as to the Debtor and the Bank.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based upon Local Rules 4001-2, and 9013-1, 11 U.S.C. § 363(c), and Bankruptcy Rules 4001 and 9014, the supporting Memorandum of Points and Authorities annexed hereto, the attached Kirk Declaration, the arguments and statements of counsel to be made at the hearing on the Motion, and other admissible evidence properly brought before the Court.

As set forth in detail in the accompanying Memorandum of Points and Authorities, the proposed use of cash collateral does not include any of the provisions set forth in Bankruptcy Rule 4001(c)(1)(B)(i) – (xi) or Local Bankruptcy Rule 4001-2(b).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rule 9013-1(f), any opposition or response to the Motion must be filed with the Clerk of the United States Bankruptcy Court and served upon the United States Trustee as well as counsel for the Debtor at the address located in the upper left-hand corner of the first page of this Notice by no later than fourteen (14) days before the hearing on the Motion. Pursuant to Local Rule 9013-1(h), failure to file a timely

1   opposition or response may be deemed by the Court to be consent to the granting of the relief

2   requested in the Motion.

3       **WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

4       (1)    Affirming the adequacy of the Notice given herein;

5       (2)    Granting the Motion on an interim basis;

6       (3)    Authorizing the Debtor to use cash collateral to pay all of the expenses set forth in

7   the Budget, with authority to deviate from the line items contained in the Budgets by not more

8   than 15% on each line item and not more than 5% on a cumulative basis;

9       (4)    Authorizing the Debtor to provide adequate protection as set forth in the Motion;

10      (5)    Approving the Stipulation in its entirety; and

11      (6)    Granting such other and further relief as the Court deems just and proper under

12  the circumstances.

13  Dated: November 7, 2014          ATHERTON FINANCIAL BUILDING, LLC

14

15

16  By:    */s/ Jeffrey S. Kwong*

17            DAVID B. GOLUBCHIK
              JEFFREY S. KWONG

18            LEVENE, NEALE, BENDER, YOO
                & BRILL, L.L.P.

19            Attorneys for Chapter 11 Debtor
              and Debtor in Possession

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## JURISDICTION AND VENUE

4       The Debtor commenced its bankruptcy case by filing a voluntary petition under chapter

5   11 of title 11 of the United States Code (the "Bankruptcy Code") on September 9, 2014 (the

6   "Petition Date").  The Debtor continues to operate its business and manage its financial affairs as

7   a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

8       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This

9   matter relates to the administration of the Debtor's bankruptcy estate and is accordingly a core

10  proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), (M) and (O).  Venue of this case is proper

11  in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief

12  requested in this Motion are Section 363 of the Bankruptcy Code, and Rules 4001 and 9013 of

13  the Federal Rules of Bankruptcy Procedure ("FRBP").

14

## II.

15

## FACTUAL BACKGROUND

16  **A.    Background**

17      The Debtor's primary asset is a commercial building located at 1906 El Camino Real,

18  Menlo Park, CA 94027 (the "Property").  The Property consists of a two-story class D stud and

19  wood panel office building of approximately 11,855 square feet (the "Building").  Currently,

20  Noosphere Ventures occupies the second floor of the Building.

21      The Property is encumbered by a first priority lien in favor of Bank SinoPac (the "Bank")

22  to secure an obligation in the principal amount of approximately $2.5 million.  The Property is also

23  encumbered by a second priority lien in favor of David and Cathy Tsang (the "Tsangs") to secure

24  an obligation in the principal amount of approximately $5.5 million, as discussed below.

25      Prior to the bankruptcy filing, in 2010, a non-debtor entity (North America Capital LLC)

26  borrowed approximately $5.5 million from the Tsangs.  The Debtor executed a junior deed of trust

27  in favor of the Tsangs to secure such obligation.

28

1    The aforementioned note became due in May 2014.  Because the Debtor was in the

2    process of rehabilitating the Building while seeking tenants to generate revenue, the Debtor

3    was unable to satisfy the obligation of the non-debtor entity.  As a result, on May 8, 2014, the

4    Tsangs caused a notice of default and election to sell under deed of trust (the "<u>Notice of

5    Default</u>") to be issued and recorded in the San Mateo County recorder's office against the

6    Property.  On August 12, 2014, the Tsangs caused a notice of trustee sale under the deed of

7    trust (the "<u>Notice of Sale</u>") to be issued and recorded in the San Mateo County recorder's

8    office against the Building.

9    The trustee sale was scheduled to take place on September 10, 2014.  Although the

10    Debtor was able to procure a tenant for the second floor space of the Building in August 2014,

11    an agreement to delay or withdraw the foreclosure sale was not reached.

12    The Debtor believes that the current fair market value of the Property is approximately

13    $15 million, while the total asserted debt is around $10 million.  In order to preserve the

14    Property and the value for the benefit of all creditors and equity holders, this bankruptcy was

15    commenced on September 9, 2014.

16    **B.    Bankruptcy Developments**

17    After the commencement of this case, the Debtor continued to manage the Property

18    through a property management company, Guggenheim Realty Group, Inc.

19    The Debtor has sought to employ Intero Real Estate Services ("<u>Intero</u>") as its real estate

20    broker to market and sell the Property for maximum value.  The Property has been listed and

21    marketed by Intero.  The Debtor has received several offers on the Property and is optimistic that

22    the Property could be sold in the near future to pay its creditors in full.

23    ///

24    ///

25    ///

6

**C.      Asset Value and Secured Debt**

The Debtor believes that the fair market value of the Property is approximately $15 million. The primary secured debts include statutory property taxes in the approximate amount of $184,838.17, a first priority lien in favor of the Bank to secure an obligation in the approximate principal amount of $2.5 million, a second priority lien in favor of the Tsangs to secure an obligation in the principal amount of $5.5 million, and a $10,000 mechanics lien in favor of Golden State Granite and Marble.

**D.      Need for Use of Cash Collateral**

The Debtor seeks Court authority to use cash collateral in order to pay the expenses of maintaining and operating the Property, as set forth in the Budget, copies of which are attached as **Exhibit "1"** to the Kirk Declaration, through February 2015.  The Budget reflects the Debtor's ordinary and necessary operating expenses that must be paid postpetition to preserve the value and condition of the Property.   While the Budget represents the Debtor's best estimate of such expenses, the needs of the businesses may fluctuate.   Thus, the Debtor seeks authority to deviate from the total expenses contained in the Budget by no more than 15% on a line-item basis and no more than 5% on a cumulative basis without the need for further Court order.

The Debtor believes that the current valuation and maintenance of the Property provide adequate protection to the secured creditors.

On the other hand, if the Debtor is not permitted to use cash collateral, the Property cannot be adequately maintained, and the Debtor would likely run into the risk of losing its only tenant on the Property.  This would reduce the value of the estate and potential recovery to creditors.

**E.      Cash Collateral Stipulation Entered Into Between the Debtor and the Bank**

On October 31, 2014, the Debtor and the Bank entered into a stipulation for use of cash collateral (the "Stipulation"), which is attached as **Exhibit "2"** to the Kirk Declaration annexed hereto.  The Stipulation establishes the terms and conditions under which the Bank will consent to the Debtor's continued use of the Bank's cash collateral.  The salient terms of the Stipulation are as follows:

1    ***Authorization.***            The Debtor is granted authority to use cash collateral, only if the

2    Debtor is current with its adequate protection payments to the Bank, in accordance with the

3    Budget through the earlier of (a) the date escrow closes with respect to a sale of the property; or

4    (b) the date the debtor's authorization to use Cash Collateral terminates in accordance with

5    paragraph 6 of the Stipulation; or (c) March 31, 2015.  The Debtor may exceed the budgeted

6    amount for any line item expense by 15%, and any amounts in excess of 15% shall be made only

7    with the prior written consent of the Bank or an order of the Court.  See (Stipulation, para. 3.)

8    ***Adequate Protection.*** As adequate protection to the Bank, the Debtor shall pay to the

9    Bank monthly adequate protection payments in the sum of $15,787.49 by wire transfer,

10    commencing with the first payment to be received by the Bank no later than October 30, 2014,

11    and on the twentieth day of each month thereafter through March 20, 2015.  See (Stipulation,

12    para. 2.)

13    As further adequate protection to the Bank, the Bank shall receive a replacement lien and

14    security interest in and to all assets of the Debtor to which the Bank's pre-petition lien would

15    have attached but for the filing of the Debtor's bankruptcy petition to the extent the value of the

16    Bank's collateral declines on or after the Petition Date.  The priority of the post-petition lien

17    granted to the Bank shall be in the same priority, nature, and extent as existed on the Petition

18    Date.  The security interest and lien granted shall be perfected by operation of law upon the

19    Court's entry of an order approving this Stipulation.  The Bank shall not be required to file or

20    record any financing statement or take any other action in order to perfect the security interest

21    and liens granted hereunder.  Notwithstanding the foregoing, the Bank's replacement lien shall

22    not encumber any claims for relief arising under Sections 506(c), 544, 545, 547, 548, or 549. See

23    (Stipulation, para. 4).

24    ***Sale of the Property.***  The Debtor shall use its best efforts to close a sale of the Property,

25    and shall use its best efforts to cause the Bank to be paid in full, by no later than March 31, 2015.

26    See (Stipulation, para. 6).

27    ***Termination.***            The Stipulation provides the following termination provisions:

28

8

(a) <u>Automatic Termination</u>.  Notwithstanding any other provision contained herein, the Debtor's authorization to use Cash Collateral pursuant to this Stipulation shall terminate immediately and automatically, without any obligation of the Bank to provide notice to the Debtor, upon the Bankruptcy Court's entry of an order (i) converting this bankruptcy case to a case under chapter 7 of the Bankruptcy Code or directing the appointment of a chapter 11 trustee in this bankruptcy case; or (ii) granting the Bank relief from the automatic stay with respect to the Bank's interest in the Property.

(b)      <u>Noticed Termination</u>.  If the Debtor fails to fully and timely perform any provision, term or condition of this Stipulation, or takes any action in violation of this Stipulation, the Debtor shall be in default under this Stipulation.  In the event of a default, the Bank shall give written notice to the Debtor of the default and of the Bank's withdrawal of consent to the use of Cash Collateral and, unless the default is cured within 10 days of such written notice, the Debtor's right to use Cash Collateral pursuant to this Stipulation shall immediately cease.  <u>See</u> (Stipulation, para. 7).

**F.      Compliance with Rule 4001(c) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2.**

Pursuant to FRBP 4001(c)(1)(B)  and Local Bankruptcy Rule 4001-2(b) and (d), the Debtor submits that the relief requested by the Debtor pertaining to the use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| **Provision** | |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the | No |

9

| Provision | |
|---|---|
| estate or to limit access to the court to seek any relief under other applicable provision of law. | |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

### III.

### DISCUSSION

**A.    The Debtor Must Be Authorized to Use Cash Collateral to Maintain and Preserve the Property in Accordance with the Budget**

A debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C.§ 363(c)(l).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  See 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ."  11 U.S.C. §363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr. C.D. Cal.1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th Cir. BAP 1991).  In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business."  In re Dynaco Corporation, 162 B.R. 389 (Bankr. D.N.H. 1993), quoting In re Stein, 19 B.R. 458, 459. (Bankr. E.D. Pa.1982).

Here, the only source of revenue available to the Debtor, to use to maintain and preserve the Property for the benefit of creditors, is the rental income generated from the second floor of the Property.  If the Debtor is not permitted to use cash collateral to maintain the Property, it is a

11

1    virtual certainty that: (1) the Debtor will lose its only tenant; (2) the Property will fall into

2    disarray; and (3) the $15 million estimated sale value for the Property cannot be preserved for the

3    benefit of creditors.

4          The Budget reflects the Debtor's ordinary and necessary operating expenses that must be

5    paid postpetition to maintain the property and preserve its value for a § 363 sale.  While the

6    Budget represents the Debtor's best estimates of such expenses, the needs of the Property may

7    fluctuate.  Thus, the Debtor seeks authority to deviate from the total expenses contained in the

8    Budget by no more than 15% on a line-item basis and no more than 5% on a cumulative basis,

9    without the need for further Court order.

10   **B.        Secured Creditors Are Adequately Protected**

11         To the extent that an entity has a valid security interest in the revenues generated by

12   property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy

13   Code.  Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured

14   creditor's cash collateral if the secured creditor is adequately protected.  In re Mellor, 734 F.2d

15   1396, 1400 (9th Cir. 1984).  See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir. 1987); In

16   re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr. C.D. Cal. l988).

17         Pursuant to the Supreme Court case of United Savings Association v. Timbers of Inwood

18   Forest Associates, 108 S.Ct. 626, 629 (1988) and subsequent case law, the property interest that a

19   debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is

20   only the value of the lien that secures the creditor's claim.  108 S.Ct. at 630.  See also McCombs,

21   88 B.R. at 266.  Section 506(a) "limit[s] the secured status of a creditor (*i.e.*, the secured

22   creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral."

23   Id.

24         In the case of an oversecured creditor, Section 506(a) and Timbers mandate that "there is

25   no lack of adequate protection [even where there is] a decline in collateral value" provided the

26   secured creditor remains oversecured.  McCombs, 88 B.R. at 266; In re Chauncy Street Assoc.

27   Ltd. Partnership, 107 B.R. 7, 8 (Bankr. D. Mass. 1989).  Here, the secured creditors are

28

adequately protected by a substantial equity cushion and the Debtor's continued efforts to maintain and preserve the Property for the benefit of creditors.

### 1. The Secured Creditors Will Be Adequately Protected by Substantial Equity Cushions

As noted above, to the extent that an entity, other than the Debtor, has a valid security interest in the rents generated from the Property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code.  11 U.S.C. §363(a).  Pursuant to Section 363(c)(2), the Court may authorize the Debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected.  In re Mellor at 1400.  See also In re O'Connor at 1398; In re McCombs, 88 B.R. at 265.

It is well established that the existence of an equity cushion alone can constitute adequate protection to a secured creditor when a debtor seeks to use cash collateral.  In re Mellor, 734 F.2d 1396 (9th Cir. 1984).  In Mellor, the Ninth Circuit held that a 20% equity cushion constituted adequate protection as a matter of law.  Id. at 140-01.  The Ninth Circuit indicated that a cushion of less than 20% could also constitute adequate protection and cited with approval decisions holding that equity cushions of between 10% and 20% constituted adequate protection. Id., (citing In re McGowan, 6 B.R. 241, 243 (Bankr. E.D. Pa.1980) (holding that a 10% cushion is adequate protection); In re Rogers Development Corp., 2 B.R. 679, 685 (Bankr. E.D. Va.1980) (equity cushion of approximately 15% to 20% was adequate protection notwithstanding that the debtors had no equity in the property); see also, In re Hawaiian Pacific Industries, 17 B.R. 670, 673 (Bankr. D. Hawaii 1982) (15% cushion constituted adequate protection).

The Property has a fair market value of $15,000,000, and the total amount of secured debt asserted against the estate is $9,754,330.59.  The property taxes owed are approximately $184,838.17, which renders an equity cushion of $14,815,161.83 and equity cushion percentage of 8,015%.  The first deed of trust in favor of the Bank is $2,715,985, which renders an equity cushion of $12,099,176.83 and equity cushion percentage of 445.48%.  The second deed of trust in favor of the Tsangs is $6,843,507.42, which renders an equity cushion of $5,255,669.41 and an equity cushion percentage of 76.79%.  The mechanics lien of $10,000 has an equity cushion

of $5,245,669.41 and an equity cushion percentage of 52,456%.  Therefore, all of the secured
creditors of Atherton are adequately protected by substantial equity cushions.

**2.    The Secured Creditors Will Be Further Adequately Protected by the Debtor's Continued Maintenance of the Property**

The preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral.  In re Triplett, 87 B.R. 25 (Bankr. W.D. Tex. 1988).  See also In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982).  The Stein Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business.  See also, In re McCombs, supra, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

As reflected in the Budget, the Debtor's continued maintenance of the Property will adequately protect the secured creditors because it will preserve the value of the Property.  The Debtor's continued management of the Property will also allow it to continue to receive rental payments from the Property to make adequate protection payments, if necessary, to the secured creditors.

The use of cash collateral is critical to the Debtor's ability to preserve the value of the Property for the benefit of all creditors.  As demonstrated herein, the use of the Debtor's cash collateral, in accordance with the Budget, will preserve and maximize the Debtor's assets for the benefit of the estates and all creditors.

If the Debtor is not permitted to use cash collateral to maintain the Property, it is a virtual certainty that the Debtor will likely run into the risk of losing the only tenant on the Property.  This would reduce the value of the Property for the estate and any potential recovery to creditors.

If the Debtor is authorized to use cash collateral, then it will be able to continue to maintain the Property and generate cash flow to make adequate protection payments, if

14

1 | necessary. Thus, the use of cash collateral will enhance the Debtor's ability to promptly sell the

2 | Property through bankruptcy for the benefit of all creditors.

**C.    Compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2.**

Pursuant to FRBP 4001(c)(1)(B) and Local Bankruptcy Rule 4001-2(b) and (d), the Debtor submits that the relief requested by the Debtor pertaining to the use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| **Provision** | |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |

| Provision | |
|---|---|
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

Pursuant to FRBP 4001(b)(1)(C), the Debtor is required to serve a copy of the Motion on any entity with an interest in the Debtor's cash collateral, the 20 largest unsecured creditors, and any other entity that the Court directs. The Debtor has complied with the foregoing by serving a copy of the Notice, the Motion, and the Kirk Declaration by email and/or U.S. mail on the secured creditors, the 20 largest unsecured creditors, the United States Trustee, and parties requesting special notice in each of the Debtor's case.

**D.    The Debtor Should be Authorized to Use Cash Collateral of the Bank Pursuant to the Terms of the Stipulation**

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); <u>In re Oak Glen R-Vee</u>, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); <u>In re Tucson Indus. Partners</u>, 129 B.R. 614 (9th Cir. BAP 1991).

With respect to the Bank, the Debtor and the Bank have entered into the Stipulation, pursuant to which the Bank has consented to the Debtor's use of cash collateral. As adequate protection to the Bank, the Debtor has agreed to pay to the Bank monthly adequate protection payments in the sum of $15,787.49 by wire transfer. For all of the reasons discussed herein, the Debtor believes that the Stipulation is fair and reasonable and in the best interest of the estate.

1  The Debtor has no ability to continue to manage this bankruptcy estate and maximize the value

2  of the Property unless the Debtor has the ability to continue to use its cash collateral.

3  **IV.**

4  **CONCLUSION**

5  Based on the foregoing, the Debtor submits that approval by this Court of the Motion is

6  in the best interest of the Debtor's estate and respectfully requests that the Court enter an order:

7  (1)   Affirming the adequacy of the Notice given herein;

8  (2)   Granting the Motion on an interim basis;

9  (3)   Authorizing the Debtor to use cash collateral to pay all of the expenses set forth in

10  the Budget, with authority to deviate from the line items contained in the Budgets by not more

11  than 15% on each line item and not more than 5% on a cumulative basis;

12  (4)   Authorizing the Debtor to provide adequate protection as set forth in the Motion;

13  (5)   Approving the Stipulation in its entirety; and

14  (6)   Granting such other and further relief as the Court deems just and proper under

15  the circumstances.

16

17  Dated: November 7, 2014                    ATHERTON FINANCIAL BUILDING, LLC

18

19                                            By:   _/s/ Jeffrey S. Kwong_____
20                                                  DAVID B. GOLUBCHIK
                                                    JEFFREY S. KWONG
21                                                  LEVENE, NEALE, BENDER, YOO
                                                        & BRILL, L.L.P.
22                                                  Attorneys for Chapter 11 Debtor
                                                    and Debtor in Possession
23

24

25

26

27

28

### DECLARATION OF BENJAMIN KIRK

I, Benjamin Kirk, hereby declare as follows:

1.          I am over 18 years of age.  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.          I am the managing member of Sunshine Valley, LLC, who has a 20% ownership interest in Atherton Financial Building, LLC (the "Debtor").  I also manage the operations of the Debtor.  I have reviewed and am familiar with and am knowledgeable about the books and records of the Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge and information recorded.

3.          I make this declaration in support of the Debtor's motion for use of cash collateral.

4.          The Debtor's primary asset is a commercial building located at 1906 El Camino Real, Menlo Park, CA 94027 (the "Property").  The Property consists of a two-story class D stud and wood panel office building of approximately 11,855 square feet (the "Building").  Currently, Noosphere Ventures occupies the second floor of the Building.

5.          The Property is encumbered by a first priority lien in favor of Bank SinoPac (the "Bank") to secure an obligation in the approximate principal amount of $2.5 million.  The Property is also encumbered by a second priority lien in favor of David and Cathy Tsang (the "Tsangs") to secure an obligation in the principal amount of approximately $5.5 million, as discussed below.

6.          Prior to the bankruptcy filing, in 2010, a non-debtor entity (North America Capital LLC) borrowed approximately $5.5 million from the Tsangs.  The Debtor executed a junior deed of trust in favor of the Tsangs to secure such obligation.

7.          The aforementioned note became due in May 2014.  Because the Debtor was in the process of rehabilitating the Building while seeking tenants to generate revenue, the Debtor was unable to satisfy the obligation of the non-debtor entity.  As a result, on May 8, 2014,

the Tsangs caused a notice of default and election to sell under deed of trust (the "Notice of Default") to be issued and recorded in the San Mateo County recorder's office against the Property.  On August 12, 2014, the Tsangs caused a notice of trustee sale under the deed of trust (the "Notice of Sale") to be issued and recorded in the San Mateo County recorder's office against the Building.

8.          The trustee sale was scheduled to take place on September 10, 2014. Although the Debtor was able to procure a tenant for the second floor space of the Building in August 2014, an agreement to delay or withdraw the foreclosure sale was not reached.

9.          I believe that the current fair market value of the Property is approximately $15 million, while the total asserted debt is around $10 million.  In order to preserve the Property and the value for the benefit of all creditors and equity holders, this bankruptcy was commenced on September 9, 2014.

10.          After the commencement of this case, the Debtor continued to manage the Property through a property management company, Guggenheim Realty Group, Inc.

11.          The Debtor has sought to employ Intero Real Estate Services ("Intero") as its real estate broker to market and sell the Property for maximum value.  The Property has been listed and marketed by Intero.  The Debtor has received several offers on the Property, and I am optimistic that the Property could be sold in the near future to pay the estate's creditors in full.

12.          I believe that the fair market value of the Property is $15 million.  The primary secured debts include statutory property taxes in the approximate amount of $184,838.17, a first priority lien in favor of the Bank to secure an obligation in the approximate principal amount of $2.5 million, a second priority lien in favor of the Tsangs to secure an obligation in the principal amount of $5.5 million, and a $10,000 mechanics lien in favor of Golden State Granite and Marble

13.          The Debtor seeks Court authority to use cash collateral in order to pay the expenses of maintaining and operating the Property, as set forth in the Budget, a copy of which is

attached as **Exhibit "1"** to my declaration, through February 2015.  The Budget reflects the Debtor's ordinary and necessary operating expenses that must be paid postpetition to preserve the value and condition of the Property.  While the Budget represents the Debtor's best estimate of such expenses, the needs of the businesses may fluctuate.  Thus, the Debtor seeks authority to deviate from the total expenses contained in the Budget by no more than 15% on a line-item basis and no more than 5% on a cumulative basis without the need for further Court order.

14.	The Debtor also seeks Court approval of the Stipulation entered into between the Debtor and the Bank on October 31, 2014 (the "Stipulation"), a copy of which is attached as **Exhibit "2"** to my declaration.

15.	I believe that the current valuation and maintenance of the Property provide adequate protection to the secured creditors.

16.	On the other hand, if the Debtor is not permitted to use cash collateral, the Property cannot be adequately maintained, and the Debtor would likely run into the risk of losing its only tenant on the Property.  This would reduce the value of the Property to the estate and any potential recovery to creditors.

17.	The relief requested by the Debtor pertaining to the use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| **Provision** | |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor | No |

| Provision | |
|---|---|
| Findings of fact on matters extraneous to the approval process. | No |

18.          Based on all of the foregoing, and exercising my reasonable business judgment, I believe that approval of the Motion and Budget is appropriate.

19.          Further, based on the foregoing, I believe that the terms and conditions of the Stipulation are fair and reasonable under the circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of November 2014, at West Covina, California.

BENJAMIN KIRK

**EXHIBIT 1**

# Profit & Loss Proforma

### Projection Only/No Guarantees Given nor Implied

**Atherton Financial Building LLC**

| | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Total |
|---|---|---|---|---|---|---|---|
| Rent Income | $ - | $ 39,792.00 | $ 39,792.00 | $ 39,792.00 | $ 39,792.00 | $ 39,792.00 | $ 198,960.00 |
| CAM Charges | $ 2,984.40 | $ 5,968.80 | $ 5,968.80 | $ 5,968.80 | $ 5,968.80 | $ 5,968.80 | $ 32,828.40 |
| First Republic Bank Bonus Payment | $ 25.00 | $ - | $ - | $ - | $ - | $ - | $ 25.00 |
| Debt Service - 1st Lien (Interest and Principal) | $ - | $ 15,787.49 | $ 15,787.49 | $ 15,787.49 | $ 15,787.49 | $ 15,787.49 | $ 78,937.45 |
| Management Fee - Guggenheim Realty | $ - | $ 2,288.04 | $ 2,288.00 | $ 2,288.00 | $ 2,288.00 | $ 2,288.00 | $ 11,440.04 |
| Accounting Fee - Guggenheim Realty | $ - | $ 1,768.50 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 3,368.50 |
| Payroll Expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East West Bank Maintenance Fee | $ 12.00 | $ 12.00 | $ 12.00 | $ 12.00 | $ 12.00 | $ 12.00 | $ 72.00 |
| Alarm Services | $ - | $ 345.00 | $ 345.00 | $ 345.00 | $ 345.00 | $ 345.00 | $ 1,725.00 |
| Security Patrol | $ - | $ - | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 6,000.00 |
| Telephone/Internet | $ - | $ 948.00 | $ 948.00 | $ 948.00 | $ 948.00 | $ 948.00 | $ 4,740.00 |
| Gas & Eletricity | $ 1,298.36 | $ 3,337.72 | $ 1,025.00 | $ 1,025.00 | $ 1,025.00 | $ 1,025.00 | $ 8,736.08 |
| Water | $ 372.75 | $ 1,040.58 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 2,413.33 |
| Trash | $ - | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 500.00 |
| Elevator Service | $ - | $ 1,449.53 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 3,449.53 |
| Elevator Phone Lines | $ - | $ 160.00 | $ 160.00 | $ 160.00 | $ 160.00 | $ 160.00 | $ 800.00 |
| Immix Leasing | $ - | $ 541.58 | $ 270.79 | $ 270.79 | $ 270.79 | $ 270.79 | $ 1,624.74 |
| Landscaping | $ - | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 1,750.00 |
| O'Neils Lock & Key | $ 175.00 | | | | | | |
| Maintenance & Repair | $ - | $ 10,642.75 | $ 10,000.00 | $ 3,000.00 | $ 17,000.00 | $ 10,000.00 | $ 50,642.75 |
| Property Insurance | $ - | $ - | $ 2,736.00 | $ - | $ - | $ - | $ 2,736.00 |
| Property Taxes | $ - | $ - | $ - | $ 42,489.77 | $ - | $ - | $ 42,489.77 |
| United States Trustee Fees | $ - | $ 325.00 | $ - | $ - | $ 975.00 | $ - | $ 1,300.00 |
| Net Income | $ 1,126.29 | $ 6,989.61 | $ 9,088.52 | $ (23,665.25) | $ 4,824.52 | $ 11,824.52 | $ 10,188.21 |
| | | | | | | | |
| Starting Cash | $ 9,971.26 | $ 53,873.95 | $ 60,863.56 | $ 69,952.08 | $ 46,286.83 | $ 51,111.35 | |
| Change in Cash | $ 1,858.11 | $ 38,771.19 | $ 36,672.28 | $ 69,426.05 | $ 40,936.28 | $ 33,936.28 | |
| Ending Cash | $ 8,113.15 | $ 15,102.76 | $ 24,191.28 | $ 526.03 | $ 5,350.55 | $ 17,175.07 | |

*This is an updated cash flow statement prepared by the Debtor, after the Debtor entered into the Stipulation with the Bank.  The changes are slight, and the Debtor does not anticipate that the Bank will have any objections to this updated budget.

**EXHIBIT 2**

Michael Gerard Fletcher (State Bar No. 70849)
  mfletcher@frandzel.com
Christopher D. Crowell (State Bar No. 253103)
  ccrowell@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard, Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor BANK SINOPAC
LOS ANGELES BRANCH

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| In re | Case No. 2:14-bk-27223-TD |
|---|---|
| ATHERTON FINANCIAL BUILDING LLC, | Chapter 11 |
| Debtor. | **STIPULATION FOR INTERIM USE OF CASH COLLATERAL AND GRANT OF ADEQUATE PROTECTION** |

This Stipulation for Interim Use of Cash Collateral and Grant of Adequate Protection ("Stipulation") is entered into by and between secured creditor Bank SinoPac Los Angeles Branch ("Bank"), by and through its attorneys Frandzel Robins Bloom & Csato, L.C., on the one hand, and debtor and debtor in possession Atherton Financial Building LLC ("Debtor," and with the Bank, "Parties"), by and through its proposed attorneys Levene, Neale, Bender, Yoo & Brill L.L.P., on the other hand, with reference to the following facts.

## RECITALS

A.    The Bank and SC Project Management LLC ("SC LLC") entered into a Business Loan Agreement dated November 22, 2011 ("BLA"), pursuant to which, among other things, the Bank agreed to extend a loan to SC LLC in the original principal sum of $2,892,500 ("Loan").

B.    To evidence the Loan, SC LLC executed and delivered to the Bank a Promissory Note dated November 22, 2011, in the original principal sum of $2,892,500 ("Note").

C.    To secure repayment of amounts outstanding under the Note, SC LLC also

1  executed and delivered to the Bank, among other things, a Deed of Trust dated November 22,

2  2011 ("DOT"), whereby SC LLC granted, transferred, and assigned all of its right, title, and

3  interest in and to the real property commonly known as 1906 El Camino Real, Menlo Park,

4  California 94025 ("Property"), and all leases of and rents from the Property, in trust for the Bank's

5  benefit.  The DOT was recorded in the Official Records of San Mateo County, California, on

6  December 2, 2011, as Instrument Number 2011-146981.

7       D.    The Bank and SC LLC subsequently entered into a Change in Terms Agreement

8  dated June 15, 2012 ("CTA"), whereby, among other things, the borrower's name under the loan

9  documents was changed to the Debtor.  In connection with the CTA, the Debtor executed and

10  delivered to the Bank a Modification of Deed of Trust dated June 15, 2012, to amend the trustor's

11  name under the DOT from SC LLC to the Debtor.

12       E.    The BLA, the Note, the DOT, and the CTA are individually and collectively

13  referred to herein as the "Loan Documents."

14       F.    The Bank sent to the Debtor the Bank's default and demand letter on September 8,

15  2014, relating to missed payments and junior liens.

16       G.    The Debtor commenced this bankruptcy case by filing a voluntary petition for

17  relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the

18  Central District of California ("Bankruptcy Court") on September 9, 2014 ("Petition Date").

19       H.    As of the Petition Date, Bank asserts that the Debtor was in default under the Loan

20  Documents as a result of, among other things, the Debtor's failure (1) to make the monthly

21  installment payment due on August 1, 2014, and September 1, 2014; (2) to make any subsequent

22  installments; and (3) to allow a junior lien to attach to the Property.

23       I.    The Debtor's schedules of assets and liabilities ("Schedules"), filed September 23,

24  2014, list the value of the Property at $15,000,000.  The Schedules also list the Bank holding a

25  first priority lien against the Property securing a $2,715,985 claim which is not contingent,

26  unliquidated, or disputed.

27       J.    On October 19, 2014, the San Mateo County Tax Collector-Treasurer filed a proof

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  of claim asserting a $95,522.16 claim for unpaid real property taxes secured by the Property.

2        K.    As of October 31, 2014, Bank asserts that the amounts outstanding under the Note

3  consisted of (1) a $2,715,985.38 principal balance; (2) accrued and unpaid interest in the amount

4  of $73,451.30; and (3) unpaid late charges in the amount of $3,641.24; for a total of

5  $2,796,077.92, plus accrued and accruing default interest, and other fees, costs, and charges

6  (including attorney's fees and costs) to which, the Bank asserts, the Bank is entitled under the

7  Loan Documents ("<u>Loan Balance</u>").

8        L.    The Debtor desires to use rents from the Property, which are cash collateral (as

9  Bankruptcy Code section 363(a) defines such term) in which the Bank has an interest ("<u>Cash

10  Collateral</u>"), to pay expenses associated with the Property and to make payments to the Bank. The

11  Debtor advised the Bank and Office of the U.S. Trustee that its property manager utilized

12  $20,868.99 of post-petition rental revenue prior to obtaining consent of the Bank or order of the

13  Bankruptcy Court due to property manager's misunderstanding of the restrictions on use of cash

14  collateral, although all such expenses were utilized to maintain and upkeep the Property.

15        M.    The Bank is prepared to consent to the Debtor's use of Cash Collateral, including

16  ratification of the prior payments from the cash collateral, on the terms and conditions set forth

17  herein.

18  **AGREEMENT**

19      1.    **Recitals.**  The Recitals, above, are incorporated herein by this reference, and the

20  Parties acknowledge and agree that the information recited above is true and correct.

21      2.    **Payments to the Bank.**  The Debtor shall pay to the Bank monthly adequate

22  protection payments in the sum of 15,787.49 by wire transfer ("<u>Budgeted Payments</u>"),

23  commencing with the first payment to be received by the Bank no later than Thursday, October

24  30, 2014, and on the twentieth (20th) day of each month thereafter through March 20, 2015. The

25  Bank shall be entitled to apply the payments received to past due payment in its sole discretion,

26  without prejudice to the Debtor's right to review such application and raise any objections which

27  may be appropriate.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**3.     Use of Cash Collateral.**  If and only if the Debtor is otherwise current in its payments to the Bank, the Debtor may use Cash Collateral in accordance with this Stipulation and the Budget attached hereto as Exhibit 1 ("Budget") through the earlier of (a) the date escrow closes with respect to a sale of the Property; (b) the date the Debtor's authorization to use Cash Collateral terminates in accordance with paragraph 6 below; or (c) March 31, 2015. The Debtor may exceed the budgeted amount for any line item expense by 15% and any amounts in excess of 15% shall be only with the prior written consent of the Bank, or an entered order of the Bankruptcy Court, but in no events if the Debtor has defaulted in the payments to the Bank. The Debtor shall commence no material repairs at or on or with respect to the Property which may impair the Debtor's ability to make the first two payments to the Bank without first having timely made the first two payments to the Bank required by this Stipulation.

**4.     Replacement Lien.**  The Bank shall receive a replacement lien and security interest in and to all assets of the Debtor to which the Bank's pre-petition lien would have attached but for the filing of the Debtor's bankruptcy petition to the extent the value of the Bank's collateral declines on or after the Petition Date.  The priority of the post-petition lien granted to the Bank shall be in the same priority, nature, and extent as existed on the Petition Date.  The security interest and lien granted shall be perfected by operation of law upon the Bankruptcy Court's entry of an order approving this Stipulation.  The Bank shall not be required to file or record any financing statement or take any other action in order to perfect the security interests and liens granted hereunder.  Notwithstanding the foregoing, the Bank's replacement lien shall not encumber any claims for relief arising under Bankruptcy Code section 506(c), 544, 545, 547, 548, or 549.

**5.     Validation of Indebtedness and Bank's Allowed Secured Claim.**  The Debtor acknowledges and affirms (a) the validity and enforceability of the Loan Documents; and (b) that the Bank's security interest in the Property is perfected and not subject to avoidance under chapter 5 of the Bankruptcy Code or otherwise.

**6.     Sale of the Property.**  The Debtor shall use best efforts to close a sale of the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

Property, and shall use best efforts to cause the Bank to be paid in full the allowed amount of its

obligation directly from the escrow through which the sale closes, by no later than March 31,

2015.

       7.   **Termination.**

      (a) <u>Automatic Termination</u>.  Notwithstanding any other provision contained herein, the

Debtor's authorization to use Cash Collateral pursuant to this Stipulation shall terminate

immediately and automatically, without any obligation of the Bank to provide notice to the

Debtor, upon the Bankruptcy Court's entry of an order (i) converting this bankruptcy case to a case

under chapter 7 of the Bankruptcy Code or directing the appointment of a chapter 11 trustee in this

bankruptcy case; or (ii) granting the Bank relief from the automatic stay with respect to the Bank's

interest in the Property.

      (b)   <u>Noticed Termination</u>.  If the Debtor fails to fully and timely perform any provision,

term or condition of this Stipulation, or takes any action in violation of this Stipulation, the Debtor

shall be in default under this Stipulation.  In the event of a default, the Bank shall give written

notice to the Debtor of the default and of the Bank's withdrawal of consent to the use of Cash

Collateral and, unless the default is cured within 10 days of such written notice, the Debtor's right

to use Cash Collateral pursuant to this Stipulation shall immediately cease.

      8.   **Notices.**  All notices and other communications made or given pursuant to this

Stipulation may be sent by e-mail, overnight delivery, or regular or certified first-class United

States mail, postage prepaid, as follows:

      (a)   To Debtor:

         David B. Golubchik and Jeffrey S. Kwong
         Levene, Neale, Bender, Yoo & Brill L.L.P.
         10250 Constellation Boulevard, Suite 1700
         Los Angeles, California 90067
         dbg@lnbyb.com and jsk@lnbyb.com

      (b)   To Bank:

         Michael Gerard Fletcher and Christopher D. Crowell
         Frandzel Robins Bloom & Csato, L.C.
         6500 Wilshire Boulevard, 17th Floor

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

Los Angeles, CA 90048
mfletcher@frandzel.com and ccrowell@frandzel.com

9.   **Neutral Construction.**   The Parties agree that any rule of construction to the effect that ambiguities are resolved against the drafting party shall not apply to the interpretation of this Stipulation.

10.   **Entire Agreement.**   This Stipulation contains the entire agreement of the Parties with respect to the subject matter of this Stipulation.   There are no representations, agreements, arrangements, or understandings, oral or written, between the Parties relating to the subject matter of this Stipulation that are not fully expressed herein.

11.   **Counterparts.**   This Stipulation may be executed in any number of identical counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.   Signatures to this Stipulation transmitted by e-mail shall be sufficient to bind the signing Party and shall have the same force and effect as an original.

12.   **Assignments.**   This agreement is and shall be binding on any and all successors and assigns of the Bank, and on any and all successor bankruptcy estates, whether by conversion to another chapter or otherwise, on any and all trustees that may be appointed, and on any and all bankruptcy estates that may follow the closing of this one.

13.   **Bankruptcy Court Approval.**   The effectiveness of this Stipulation is subject to Bankruptcy Court approval; provided, however, that the Bank's consent to the Debtor's use of Cash Collateral pursuant to this Stipulation shall be effective upon execution of this Stipulation by the Bank's counsel.

[Signatures On Next Page]

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1636709.1 | 100158-0033

1      **IN WITNESS WHEREOF**, the Parties execute this Stipulation, by and through their

2  respective counsel, as of the date set forth opposite their respective signatures.

3  DATED: October 31, 2014        FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                          MICHAEL GERARD FLETCHER

4                                          CHRISTOPHER D. CROWELL

5                                          By:/s/ Michael Gerard Fletcher

6                                          MICHAEL GERARD FLETCHER
                                          Attorneys for Secured Creditor BANC SINOPAC LOS

7                                          ANGELES BRANCH

8  DATED: October 31, 2014        LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
                                          DAVID B. GOLUBCHIK

9                                          JEFFREY S. KWONG

10

11                                          By:
                                          DAVID B. GOLUBCHIK

12                                          Proposed Attorneys for Debtor and Debtor in Possession
                                          ATHERTON FINANCIAL BUILDING LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

## Profit & Loss Proforma

Projection Only/No Guarantees Given nor Implied

**Atherton Financial Building LLC**

| | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Total |
|---|---|---|---|---|---|---|---|
| Rent Income | $ - | $ 39,792.00 | $ 39,792.00 | $ 39,792.00 | $ 39,792.00 | $ 39,792.00 | $ 198,960.00 |
| CAM Charges | $ 2,984.40 | $ 5,968.80 | $ 5,968.80 | $ 5,968.80 | $ 5,968.80 | $ 5,968.80 | $ 32,828.40 |
| Guggenheim Realty Loan | 5,000.00 | | | | | | |
| Debt Service - 1st Lien (Interest and Principal) | $ - | $ 15,787.49 | $ 15,787.49 | $ 15,787.49 | $ 15,787.49 | $ 15,787.49 | $ 78,937.45 |
| Management Fee - Guggenheim Realty | $ - | $ 2,288.04 | $ 2,288.00 | $ 2,288.00 | $ 2,288.00 | $ 2,288.00 | $ 11,440.04 |
| Accounting Fee - Guggenheim Realty | 400.00 | 1,368.50 | 400.00 | 400.00 | 400.00 | 400.00 | 3,368.50 |
| Payroll Expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East West Bank Maintenance Fee | 12.00 | 12.00 | 12.00 | 12.00 | 12.00 | 12.00 | 72.00 |
| Alarm Services | $ - | 345.00 | 345.00 | 345.00 | 345.00 | 345.00 | 1,725.00 |
| Security Patrol | $ - | $ - | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 6,000.00 |
| Telephone/Internet | $ - | 948.00 | 948.00 | 948.00 | 948.00 | 948.00 | 4,740.00 |
| Gas & Eletricity | 2,118.91 | 2,517.17 | 1,025.00 | 1,025.00 | 1,025.00 | 1,025.00 | 8,736.08 |
| Water | 1,163.30 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 2,413.30 |
| Trash | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 500.00 |
| Elevator Service | $ - | 1,449.53 | 500.00 | 500.00 | 500.00 | 500.00 | 3,449.53 |
| Elevator Phone Lines | $ - | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 800.00 |
| Immix Leasing | 270.79 | 270.79 | 270.79 | 270.79 | 270.79 | 270.79 | 1,624.74 |
| Landscaping | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 1,750.00 |
| O'Neils Lock & Key | 175.00 | | | | | | |
| Maintenance & Repair | 299.50 | 10,343.25 | 10,000.00 | 3,000.00 | 17,000.00 | 10,000.00 | 50,642.75 |
| Property Insurance | $ - | $ - | 2,736.00 | $ - | $ - | $ - | $ 2,736.00 |
| Property Taxes | $ - | $ - | $ - | 42,489.77 | $ - | $ - | $ 42,489.77 |
| Net Income | 3,544.90 | 9,571.03 | 9,088.52 | (23,665.25) | 4,824.52 | 11,824.52 | 15,188.24 |
| Starting Cash | 9,946.26 | 51,267.56 | 60,838.59 | 69,927.11 | 46,261.86 | 51,086.38 | |
| Change in Cash | 4,439.50 | 36,189.77 | 36,672.28 | 69,426.05 | 40,936.28 | 33,936.28 | |
| Ending Cash | 5,506.76 | 15,077.79 | 24,166.31 | 501.06 | 5,325.58 | 17,150.10 | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR ORDER: (1) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL ON AN INTERMIN BASIS; AND (2) APPROVING STIPULATION BETWEEN THE DEBTOR AND BANK SINOPAC FOR USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BENJAMIN KIRK**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 7, 2014**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Douglas G Boven    dboven@reedsmith.com, gsandoval@reedsmith.com
- Christopher D Crowell    ccrowell@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- David B Golubchik    dbg@lnbyb.com, dbg@ecf.inforuptcy.com;stephanie@lnbyb.com
- Jeffrey S Kwong    jsk@lnbyb.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Laura Palazzolo    laura.palazzolo@berliner.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Reed S Waddell    rwaddell@frandzel.com, efiling@frandzel.com;sking@frandzel.com

**2.  SERVED BY UNITED STATES MAIL**: On **November 7, 2014**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Maria Rutenburg                                          Jacqueline Griffin
Peninsula Company                                      Vice President, Branch Manager
930 Far Creek Way                                      361 Lytton Avenue
Redwood City, CA 94062                            Palo Alto, CA 94301

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 7, 2014**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Thomas B. Donovan **Served By Attorney Service**
United States Bankruptcy Court
255 E. Temple Street, Suite 1352 / Courtroom 1345
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 7, 2014 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:14-bk-27223-TD
Central District Of California
Los Angeles
Fri Nov 7 14:39:30 PST 2014

Atherton Financial Building LLC
3592 Rosemead Blvd
Suite 325
Rosemead, CA 91770-2053

Bank SinoPac, Los Angeles Branch
c/o Frandzel Robins Bloom & Csato, L.C.
6500 Wilshire Blvd 17th Flr
Los Angeles, CA 90048-4904

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

AT&T
PO Box 5025
Carol Street, IL 60197-5025

American REO Solutions LLC
2804 Gateway Oaks Drive #200
Sacramento, CA 95833-4346

Bank SinoPac
355 South Grand Avenue
Ste 4168
Los Angeles, CA 90071-3100

COMCAST
PO Box 34227
Seattle, WA 98124-1227

California Water Service Company
PO Box 940001
San Jose, CA 95194-0001

David & Cathy Tsang
758 Loyola Drive
Los Altos, CA 94024-5918

Discount Plumbing & Rooter Company
1330 Valota Road
Redwood City, CA 94061-2156

Employment Development Dept.
1525 S. Broadway
Room 223
Los Angeles, CA 90015-3030

Franchise Tax Board
Special Procedures
POB 2952
Sacramento, CA 95812-2952

Fry's Electronics
1077 East Argues Avenue
Sunnyvale, CA 94085-3902

Golden State Granite & Marble Inc.
114 S. Amphlett Bl.
San Mateo, CA 94401-2941

Great Vista Real Estate Invest Corp
250 Selby Lane
Atherton, CA 94027-3931

Hue & Cry Inc
PO Box 548
Anderson CA 96007-0548

Immix Leasing
1833 Walter Drive
Los Banos, CA 93635-5231

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Noosphere Ventures
1906 El Camino Real
Atherton, CA 94027-4129

North America Capital LLC
126 Atherton Avenue
Atherton, CA 94027-4021

Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017-3560

PG&E
Box 997300
Sacramento, CA 95899-7300

(p)PACIFIC GAS & ELECTRIC COMPANY
PO BOX 8329
STOCKTON CA 95208-0329

Recology San Mateo County
PO Box 514230
Los Angeles, CA 90051-4230

San Mateo County Treasurer
and Tax Collector
555 County Center #1
Redwood City, CA 94063-1665

(p)CALIFORNIA STATE BOARD OF EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

Sunshine Valley LLC
Attn: Benjamin Kirk
2648 E WORKMAN AVE STE 238
West Covina, CA 91791-1604

TelePacifc Communications
PO Box 526015
Sacramento, CA 95852-6015

ThyssenKrupp Elevator Corporation
PO Box 933004
Atlanta, GA 31193-3004

Travelers
PO Box 15439
Sacramento, CA 95851-0439

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Verizon Wireless
PO Box 25505
Lehigh Valley, PA 18002-5505


Washington Capital Management LLC
2804 Gateway Oaks Drive #200
Sacramento, CA 95833-4346

David B Golubchik
Levene Neale Bender Rankin & Brill LLP
10250 Constellation Blvd Ste 1700
Los Angeles, CA 90067-6253

David & Cathy Tsang
c/o Berliner Cohen
10 Almaden Blvd.
11th Floor
San Jose
San Jose, Ca 95113-2226


Jeffrey S Kwong
Levene Neale Bender Yoo & Brill LLP
10250 Constellation Blvd Ste 1700
Los Angeles, CA 90067-6253

Laura Palazzolo
Berliner Cohen
10 Almaden Blvd 11th Fl
San Jose, CA 95113-2226


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Service
Insolvency I Stop 5022
300 N. Los Angeles St., #4062
Los Angeles, CA 90012-9903

Pacific Gas and Electric Company
PO Box 8329
c/o Bankruptcy Department
Stockton CA 95208

State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279-0001


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Intero Real Estate Serv                (u)Levene Neale ender Yoo & Brill LLP        (u)Noosphere Ventures LLC


End of Label Matrix
Mailable recipients      37
Bypassed recipients       3
Total                    40